(No. 70640.— )

RICHARD C. RUVA *et al.*, Appellants, v. ROBERT L.
MENTE *et al.*, Appellees.

*Opinion filed March 21, 1991.—Rehearing denied June 3, 1991.*

CALVO and HEIPLE, JJ., took no part.

Boyle, Goldsmith & Bolin, of Hennepin (Linn C. Goldsmith, of counsel), for appellants.

William R. Banich, of La Salle, for appellees.

JUSTICE MORAN delivered the opinion of the court:

The plaintiffs, Richard and Brenda Ruva, filed a seven-count complaint in the circuit court of Putnam County, seeking to rescind an assignment instrument they had entered into with the defendants, Robert, Charlene and Rena Mente. Count I of the complaint, the only count at issue on appeal, alleged that the assignment could be rescinded because it did not contain a warranty or a certificate of compliance as required by

section 2 of the Dwelling Unit Installment Contract Act (Ill. Rev. Stat. 1987, ch. 29, par. 8.22) (the Act). Plaintiffs filed a motion for summary judgment asking the trial court to rule in their favor on the issue of liability under count I. The trial court initially denied the motion, but later granted the motion after the plaintiffs' filed a motion for reconsideration. The defendants appealed and the appellate court, with one justice dissenting, reversed the judgment of the circuit court. (200 Ill. App. 3d 442.) This court allowed plaintiffs' petition for leave to appeal (107 Ill. 2d R. 315).

Plaintiffs raise two issues for review: (1) whether an assignment of an installment contract for the sale of a dwelling structure is an "installment contract" within the meaning of the Act; and (2) assuming *arguendo* that the assignment is subject to the Act, whether section 2 of the Act was complied with since the installment contract's warranty provision was incorporated by reference into the assignment.

In December 1984, Frank and Mary Kotar entered into an installment land sale contract with the defendants for the sale of a restaurant and a 1,200 square foot, three-bedroom home. Under the terms of the contract, the home was to be used for residential purposes. The total sale price was $180,000 and, according to the payment terms of the contract, a $50,000 down payment was to be made, with the remaining balance to be paid in monthly installments over a 10-year period.

The installment contract contained many clauses, three of which are relevant to the instant case:

"7. That the Seller [Kotar] hereunder warrants to the Buyer [defendants] that no notice from any city, village or other governmental authority of any code violation has heretofore been issued and received by the Seller or their agents with respect to either any structure on said real estate or with respect to the said business operation.

\* \* \*

15. That no right, title or interest in the real estate or other assets involved herein shall vest in the Buyer [defendants] until full compliance and performance with all of the terms, covenants and conditions hereof and delivery of Deed and Bill of Sale pursuant hereto.

\* \* \*

28. That the Buyer [defendants] shall not assign or convey [their] interest hereunder without the express written consent of the Seller."

In August 1986, the defendants with the consent of Kotar entered into an assignment instrument entitled "Transfer of Interest and Novation Regarding Articles of Agreement" (assignment), whereby they assigned their right, title and interest under the real estate installment contract to the plaintiffs. According to the terms of the assignment, the plaintiffs paid the defendants $50,000 and further agreed to pay the remaining monthly installments due under the installment contract.

The assignment contained two clauses which are relevant to the instant case:

"WHEREAS, the Parties of the First Part [seller] and the Parties of the Second Part [defendants] did on or about the 18th day of December, 1984, execute certain 'Articles of Agreement', a copy of which is attached hereto and the terms of which are incorporated by reference herein and made a part hereof as Addendum A hereto;

\* \* \*

WHEREAS, the Parties of the Second Part [defendants] and each of them desire to convey and transfer all of their right, title and interest in and to the aforesaid 'Articles of Agreement', and further in and to the assets involved therein, to the Parties of the Third Part [plaintiffs] hereunder, subject to the terms, covenants and conditions contained herein."

The warranty provision in the installment contract was incorporated by reference into the assignment but no such warranty was made between the defendants and the plaintiffs.

The plaintiffs operated the restaurant for approximately one month when they received a letter from the Department of Public Health. In the letter, they were informed that the property was inspected twice in August, and that the inspection revealed that the private sewage disposal system on the property may be inadequate. After the plaintiffs were unable to amicably resolve the sewage system problem with the seller and defendants, they vacated the premises and filed a complaint for rescission based on the defendants' failure to include within the assignment a certificate of compliance or a written warranty as required by section 2 of the Act.

Plaintiffs filed a motion for summary judgment, which was granted by the trial court. On appeal, the appellate court reversed the trial court, holding that "[t]he provisions of the sale of dwelling structures act *** do not apply to assignments." 200 Ill. App. 3d at 445.

The first issue presented for review is whether an assignment of an installment contract for the sale of a dwelling structure is an "installment contract" within the meaning of the Act. The Act defines an installment contract as:

"any contract or agreement, including contracts for deeds, bonds for deeds or any other sale or legal device, whereby a contract seller agrees to sell and a buyer agrees to buy a dwelling structure, wherein the consideration for such sale is payable in installments for a period of at least one year after buyer takes possession of the dwelling structure and the contract seller continues to have an interest, or security for the purchase price or otherwise in that property." Ill. Rev. Stat. 1987, ch. 29, par. 8.21(e).

The basic tenet of statutory construction is to give effect to the intent of the legislature. (*American Country Insurance Co. v. Wilcoxon* (1989), 127 Ill. 2d 230, 238.) The legislature has the power to define statutory terms in any reasonable manner. (*Commonwealth Edison Co. v. Property Tax Appeal Board* (1984), 102 Ill. 2d 443, 457.) However, if words within a statute are undefined, "the words must be given their ordinary and popularly understood meanings [citations]." (*Niven v. Siqueira* (1985), 109 Ill. 2d 357, 366.) Aside from the language of the statute, courts should also consider the " 'reason and necessity for the law, the evils to be remedied, and the objects and purposes to be obtained.' " *People v. Haywood* (1987), 118 Ill. 2d 263, 271, quoting *People v. Steppan* (1985), 105 Ill. 2d 310, 316.

In determining whether the assignment is an installment contract under the Act, it is first necessary to look at the language of the Act and apply it to the assignment. According to the rather lengthy definition of the term "installment contract," such contracts are said to include "any contract or agreement." (Ill. Rev. Stat. 1987, ch. 29, par. 8.21(e).) The assignment is no doubt an agreement, as the first two words of the very first paragraph of the assignment read: "THIS AGREEMENT *** ."

The types of agreements covered under the Act are those that are entered into by "contract sellers." A contract seller is defined under the Act as an "owner of a legal or beneficial interest in a dwelling structure." (Ill. Rev. Stat. 1987, ch. 29, par. 8.21(d).) The plaintiffs do not claim that the defendants held legal title to the property; rather, relying on the doctrine of equitable conversion, they maintain that the defendants received an equitable interest in the property at the time of execution of the installment contract. Whereas, the defendants claim

that according to paragraph 15 of the installment contract, they "had no right, title or interest in the real estate whatsoever and, as such, they cannot be a contract seller within the meaning of the Act."

According to the doctrine of equitable conversion:

> "as between the parties and those claiming through them, when the owner of land enters into a valid and enforceable contract for its sale he continues to hold the legal title, but in trust for the buyer; and the buyer becomes the equitable owner and holds the purchase money in trust for the seller. The conversion takes place at the time of entering into the contract." *Shay v. Penrose* (1962), 25 Ill. 2d 447, 449.

Absent paragraph 15 of the installment contract, it is clear that the defendants acquired an equitable interest in the property. However, "[t]he doctrine of equitable conversion does not apply where equitable considerations intervene or where the parties intend otherwise." (*Eade v. Brownlee* (1963), 29 Ill. 2d 214, 217; see also 7 W. Jaeger, Williston on Contracts §927, at 821 (3d ed. 1963).) In *Eade*, a contract purchaser of real estate claimed she had an equitable estate which she could mortgage. This court held that the purchaser did not have equitable title to the property sufficient to make mortgages because under the terms of the contract:

> " '[N]o right, title or interest, legal or equitable, in the the premises aforesaid, or any part thereof, shall vest in the Purchaser until the delivery of the deed aforesaid by the Seller, or until the full payment of the purchase price at the times and in the manner herein provided.' This clause clearly shows it was the intention of the parties that no equitable conversion would be made and that the purchaser would take no title in the premises until delivery of deed or full payment. Under this clause alone, the claim of equitable title in the purchaser sufficient to make mortgages is wholly defeated." *Eade*, 29 Ill. 2d at 218.

Paragraph 15 of the installment contract in the instant case is very similar to the contract clause at issue in *Eade.* Under paragraph 15, the parties agreed that no interest in the property would vest in the defendants until the contract was fully performed and the deed was delivered. Therefore, we find that the parties intended that the defendants would not hold equitable title to the property during the period in which the installment contract was executory.

Nonetheless, concluding that the defendants were not equitable owners under the doctrine of equitable conversion does not answer the question of whether they were owners of a "beneficial interest" (Ill. Rev. Stat. 1987, ch. 29, par. 8.21(e)) in the property. No definition of beneficial interest exists in the Act.

In an earlier opinion of this court on the question of whether certain trust deeds were subject to inheritance taxes, beneficial interest was defined as follows:

"A beneficial interest, when considered as a designation of the character of an estate, is such an interest as a devisee, legatee or donee takes solely for his own use or benefit and not as a holder of the title for the use and benefit of another." (*People v. Northern Trust Co.* (1928), 330 Ill. 238, 247.)

Beneficial interest has also been defined as a "[p]rofit, benefit, or advantage resulting from a contract, or the ownership of an estate as distinct from the legal ownership or control." Black's Law Dictionary 142 (5th ed. 1979).

"It is generally recognized that a purchaser of real estate, prior to a conveyance to him and prior to full performance on his part, *has by virtue of his contract an interest* which he may assign or transfer, or contract to transfer ***." (Emphasis added.) 77 Am. Jur. 2d *Vendor & Purchaser* §387 (1975); see also *Davidson v. Dingeldine* (1920), 295 Ill. 367, 373 (executory land sale

contracts are assignable and interest acquired under the contract is protected in a court of law).

After careful reading, it is clear that the defendants had a beneficial interest in the property according to the installment contract. At their election, the defendants (referred to as "Buyer" in the contract) could file a memo of the "Agreement and a title policy showing the Buyer's interest as a Contract Buyer." Moreover, pursuant to paragraph 9 of the installment contract, the defendants had a possessory interest in the property as "possession shall be given to the Buyer by the Seller on the date of the execution of this agreement." Paragraph 28 also provided "[t]hat the Buyer shall not assign or convey his interest hereunder without the express written consent of the Seller." To conclude that the defendants did not have any interest whatsoever in the property would require this court to ignore the plain language of the installment contract. Thus, we find that the defendants owned a beneficial interest in the property within the meaning of the Act.

To be considered a contract seller under the Act, the seller must own a beneficial interest in a dwelling structure. A dwelling structure under the Act is defined as:

"any private home or residence, or any building or structure to be occupied or resided in by 12 or less family units. A family unit is deemed to live independently of another family unit even though the family units may be required to share cooking facilities, laundry facilities or bathroom facilities. Dwelling structures do not include public or private hospitals, public or private school dormitories, fraternity houses, convents, monasteries, mental institutions, penal institutions, seminaries, State-licensed nursing homes or shelter care homes, or any federal, State, county or municipal institution or home." Ill. Rev. Stat. 1987, ch. 29, par. 8.21(b).

The defendants assert that under the assignment, two separate structures were involved, one a restaurant

and the other a home. Citing *Kindred v. Stuhr* (1987), 155 Ill. App. 3d 194, for support, they claim that the home is incidental to the sale of the restaurant; therefore, the assignment did not involve the sale of a dwelling structure within the meaning of the Act. The plaintiffs maintain that *Kindred* is distinguishable from the facts in the instant case.

We do not agree with the defendants that the facts in *Kindred* "are closely related to those in the instant matter," as the case is clearly distinguishable on its facts. The issue in *Kindred* was whether a motel was a dwelling unit within the meaning of the Act. (*Kindred*, 155 Ill. App. 3d at 195.) The court in *Kindred* held that the motel was not a dwelling "where a family would be expected to reside or occupy. Ordinarily, motels are considered as transitory lodgings, not family dwellings." (*Kindred*, 155 Ill. App. 3d at 196.) Moreover, the court did not believe that the presence of a manager's unit within the motel transformed the motel into a dwelling structure since the unit was considered "incidental to the operation of the motel and not a family dwelling." *Kindred*, 155 Ill. App. 3d at 196.

The instant case involves the sale of restaurant/tavern and, under the terms of the installment contract, a "residential premises which shall be used for residential purposes." The plaintiffs signed an affidavit which stated that the residential premises was "a detached 1200 square foot three-bedroom home situated south of the restaurant building situated on said real estate which was occupied as a dwelling or private home or residence by T. Wayne Biehl and Mary Helen Biehl."

After applying the definition of a dwelling structure under the Act to the facts in the record, we believe the record clearly shows that the home is a dwelling structure within the meaning of the Act. The home is a private residence that was occupied by lessees, T. Wayne

and Mary Helen Biehl. The installment contract states that the home is a residential premises that is to be solely used for residential purposes. There is nothing in the record which suggests that the home is not a dwelling structure within the meaning of the Act. Moreover, we do not find that the sale of two structures, one a restaurant and the other a home, renders the latter incidental to the former. Therefore, the defendants were contract sellers under the Act since they were owners of a beneficial interest in a dwelling structure.

The assignment must next be reviewed to determine whether "the consideration for such sale is payable in installments for a period of at least one year after buyer takes possession of the dwelling structure and the contract seller continues to have an interest, or security for the purchase price or otherwise in that property." (Ill. Rev. Stat. 1987, ch. 29, par. 8.21(e).) In exchange for the defendants' beneficial interest in the real estate, the plaintiffs agreed to make the monthly payments as set forth in the installment contract. According to the assignment, the plaintiffs agreed to "remain liable for the obligations of the 'Buyer' [defendants] under the aforesaid 'Articles of Agreement.'" With over $98,000 still due on the real estate at the time of the assignment, the monthly installment payment of $965.03 certainly committed the plaintiffs to make installment payments well beyond the statutory period of a year.

Also, the defendants continued to have an interest in the property. The defendants' interest in the property is plainly evidenced by their right under the assignment to take peaceful possession of the real estate in the event the plaintiffs failed to make the payments or perform the covenants required of them. Therefore, given that all the elements of the definition are satisfied, the assignment is an installment contract within the meaning of the Act.

The second issue presented for review is whether the warranty provision of the Act was complied with because the warranty contained in the installment contract was incorporated by reference into the assignment. Section 2 of the Act provides:

"any installment contract for the sale of a dwelling structure shall be voidable at the election of the buyer unless there is attached to the contract or incorporated therein a certificate of compliance, or in the absence of such a certificate (i) an express written warranty that no notice from any city, village or other governmental authority of a dwelling Code violation which existed in the dwelling structure before the installment contract was executed had been received by the contract seller, his principal or his agent within 10 years of the date of execution of the installment contract ***." Ill. Rev. Stat. 1987, ch. 29, par. 8.22.

The defendants claim that if this court were to hold that they had a duty under the statute to include an additional warranty in the assignment, aside from the warranty contained in the installment contract, such a result would require this court to give an assignee greater rights than the assignor had to transfer. Whereas, the plaintiffs maintain that the Act was not complied with since the warranty which was incorporated into the assignment was made "by the original sellers to the defendants-assignors as to the situation at the time of the execution of the original contract."

As contract sellers under an installment contract, the defendants had a duty to include a certificate of compliance or a written warranty in the assignment for the benefit of the plaintiffs. Under the warranty between the seller and the defendants, the seller warranted that he did not receive a notice of any possible dwelling code violation within 10 years of the date of the installment contract. However, this warranty does not address the

situation of whether the defendants received any such notice within 10 years of the date of the assignment.

We are well aware of the principle of law that an assignment "puts the assignee into the shoes of the assignor." (*Collins Co. v. Carboline Co.* (1988), 125 Ill. 2d 498, 512.) Therefore, it follows that "the assignee of a contract for the purchase of real estate acquires no greater rights in the property than were possessed by his assignor, the original contract vendee." (*Stavros v. Karkomi* (1976), 39 Ill. App. 3d 113, 123.) But, the plaintiffs are not asserting greater rights than the defendants had against the seller. Instead, the plaintiffs are claiming a right against the defendants pursuant to the assignment contract.

Our holding effectuates the purpose of the Act which "is 'to furnish information for the protection of the buyer as to the condition of the property he is purchasing without requiring that purchaser to search the records or cause an inspection of the house for possible violations.'" (*Hettermann v. Weingart* (1983), 120 Ill. App. 3d 683, 690, quoting *Shanle v. Moll* (1974), 25 Ill. App. 3d 113, 116.) When the defendants contracted to assign their beneficial interest in the dwelling structure, they were required to comply with the certificate-warranty requirement under section 2 of the Act. Their failure to do so rendered the assignment contract voidable at the option of the plaintiffs.

For the foregoing reasons, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICES CALVO and HEIPLE took no part in the consideration or decision of this case.