THE FOREST PRESERVE DISTRICT OF KANE COUNTY, Plaintiff-Appellant, v. JOSEPH F. ESTES *et al.*, as Trustees, *et al.*, Defendants-Appellees (Unknown Owners, Defendants).

Second District   No. 2—91—0222

Opinion filed December 6, 1991.—Rehearing denied January 16, 1992.

Stephen Sullivan, of Batavia, for appellant.

William E. Ryan and Timothy J. Ryan, both of Burke & Ryan, of Chicago, for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff, Forest Preserve District of Kane County (the District), appeals from an order of the circuit court of Kane County which granted the traverse and motion to dismiss filed by defendants: Joseph F. Estes and Barbara H. Estes, as trustees under the Barbara H. Estes Land Trust, dated October 11, 1982, and the Joseph F. Estes Land Trust, dated October 11, 1982; and First National Bank of Elgin, as trustee under trust agreement dated May 24, 1954, known as trust No. 811. The District raises three issues on appeal: (1) whether defendants were precluded from filing their traverse and motion to dismiss because they had filed a cross-petition seeking damages to the remainder of the property; (2) whether the trial court's finding that plaintiff lacked authority to proceed with the condemnation action pursuant to section 6 of "An Act to provide for the creation and management of forest preserve districts in counties having a population of less than 3,000,000" (Act) (Ill. Rev. Stat. 1989, ch. 96½, par. 6309) was against the manifest weight of the evidence; and (3) whether an amendment to section 6 of the Act (Ill. Rev. Stat. 1989, ch. 96½, par. 6309) which limited the District's authority to condemn property is unconstitutional as special legislation. We affirm.

Plaintiff filed an eminent domain action on January 13, 1989, seeking to acquire by condemnation certain property belonging to defendants. On February 21, 1989, defendants filed a cross-petition which alleged that the property sought to be taken was part of a larger tract of land. They requested that damages be assessed for the damage to the remainder of the tract.

Subsequently, on November 3, 1989, defendants filed their traverse and motion to dismiss. They alleged that section 6 of the Act was amended, effective August 21, 1989, to provide that the District was required to receive the concurrence or approval of the governing body of the township within which the property is located in order to have the authority to condemn property for a linear park or trail. They further alleged that, as the District did not receive the concur-

rence or approval of the governing body of Dundee Township, it was without authority to acquire the property. They asked that the condemnation action be dismissed.

The District filed a motion to strike the traverse and motion to dismiss, arguing that defendants failed to allege that the property was being condemned for a linear park or trail. Defendants were granted leave to file an amended motion and included an allegation that the District was acquiring the property for a linear park or trail. The District filed a response to the motion on January 24, 1990, and denied that the property was being acquired for a linear park or trail.

A hearing was held regarding defendants' motion on October 9, 1990. At the beginning of the hearing, the District orally moved to strike the traverse and motion to dismiss, arguing for the first time that defendants were precluded from filing the traverse because they had previously filed a cross-petition for damages to the remainder. Defendants then requested leave of court to withdraw their cross-petition, which the court granted. A hearing regarding defendant's motion then proceeded.

At the hearing, numerous exhibits were admitted by stipulation of the parties. Philip B. Elfstrom, president of the District and member of the Kane County Board, testified on behalf of the District. He stated that the property sought to be acquired was referred to as the Haeger-Estes property and consisted of approximately 40 acres. He identified a map of Dundee Township which showed that the subject property is a narrow strip of land on the west side of the Fox River. Elfstrom also identified a survey of the property by which the surveyor identified a parcel from the river's edge on the east to the top of the hill on the west and a wider portion of property which is a flat plain by Jelke's Creek. He testified that land acquisition along the Fox River is the highest priority of the District. Elfstrom stated that the property is located in unincorporated Dundee Township and that the District had not obtained the concurrence of the Township with regard to the acquisition.

Elfstrom identified defendants' exhibit No. 3 as the grant application with which the District was successful in obtaining a grant from the Department of Conservation for the acquisition of the Haeger-Estes property. The application stated that the project would be developed as a link in the Fox River trail system and would be used for a bicycle trail, fishing, boating and picnicking. Elfstrom testified that the statements in the application were correct to the best of his knowledge. The drawing of the property included in the application shows a trail from one end of the property to the other. Elfstrom

stated that South End Park is north of the subject property and Voyager's Landing Forest Preserve is south of the property.

Richard N. Young testified that he was a consultant to the Kane County Development Department Forest Preserve. He testified regarding his education and experience and stated that he was well-versed with respect to natural areas, plants, flora and fauna in Kane County. He stated that he found approximately 225 different native plants growing on the subject property and that the property was unique in Kane County. He testified that, even if no improvements were made to the property, it would be an ecologically significant acquisition for the District. He also identified a letter which he wrote to the Kane County Board which stated that the property would not be disturbed by a meandering trail along the field edge at the top of the bluff.

John J. Duerr, assistant superintendent of the District, testified that he developed properties acquired by the District and had developed five trails. Those five trails were in connection with property that had once been owned or used by railroads. He testified that the trail proposed to be placed on the subject property would be located on the top of the ridge on the existing edge of the property. The purpose of the trail would be to link the property to the existing forest preserve property to the south and make it accessible to the public. Duerr testified that there was a distinction between the development of properties on former railroad rights-of-way and the development of property such as the subject property upon which access trails would be constructed. He was asked to explain the difference and stated:

"Basically, a railroad right-of-way and other ranged easements are designed for the specific use as a trail or passageway through them. The boundaries of those were set in either, for political and/or convenience reasons. The hundred—classic example, of course, is the hundred foot standard right-of-way of a railroad as passage through a landscape and this [sic] an artificial manmade [sic] boundary as such.

In the case in point, as well as other properties, we are following more of a natural boundary. The upper edge of this property was, is flatter, of course, and had been row cropped and used very extensively for agricultural purposes through the years.

There would be little value, per se, in that acquisition as far as saving a natural world because much of that had been destroyed. The boundary was established and does move around a bit. It's not a very, one could not really draw a laser-sharp line

along the top here because there is a variation based on the topography of that particular site."

Thompson A. Dyke, a private planning and zoning and park planning consultant, then testified on behalf of defendants. He identified a topographic map of the eastern portion of the Haeger-Estes property and stated that the property has 6,500 lineal feet of frontage on the Fox River. He stated that the property sought to be acquired by the District consists of roughly 200 feet of property measured from the river's edge. He testified that the use of the property proposed by the District was a linear park and trail connecting the city park to the north of the property with Voyager's Landing on the south. Dyke testified that a linear park is a long and narrow parcel of land which connects other parcels and forms a linkage between those parcels. Normally, a linear park has a trail. Dyke based this definition on an accepted definition of linear park prepared by the National Park and Recreation Association. Dyke further testified that a trail is a pathway for essential pedestrian movement and would typically be for hiking, walking or jogging but may also allow snowmobiling, cross-country skiing or horseback riding. A trail often connects other parks and community facilities.

Dyke stated that he had designed eight or nine linear parks or trails. He testified that quite often a linear park is also a former railroad right-of-way, but linear parks may also follow along a natural corridor like a river.

During closing argument, the court asked the District's attorney if the District was raising an issue with regard to the constitutionality of the statute. The attorney responded that no constitutional issue had been raised at that point because it was the District's position that the statute did not apply to the subject property.

The court took the matter under advisement, and written memoranda were submitted by the parties. An order was later entered, on November 13, 1990, which stated that the court found that the District did not meet its burden of proof and did not establish a *prima facie* case on the matters raised in defendants' traverse and motion to dismiss. Particularly, the court found that the District did not prove a *prima facie* case of authority to condemn the property in question because, giving the words "linear park or trail" their commonly understood meaning, the concurrence of Dundee Township was necessary for this acquisition under the requirements of section 6 of the Act (Ill. Rev. Stat. 1989, ch. 96½, par. 6309). Defendants' motion was therefore granted.

The District filed a motion asking that the court reconsider its ruling which was denied on January 23, 1991. This timely appeal followed.

The District first argues that the trial court abused its discretion when it allowed defendants to withdraw their cross-petition and proceed with their traverse and motion to dismiss. It contends that the *filing* of a cross-petition precludes a defendant from contesting the conditions precedent to the filing of a petition to condemn. The District cites *County of Fayette v. Whitford* (1936), 365 Ill. 229, *Ward v. Minnesota & Northwestern R.R. Co.* (1887), 119 Ill. 287, and two additional cases which were decided in the early 20th century in support of its position.

In response, defendants argue that the cases cited are distinguishable and that, based on the circumstances here, there was no abuse of discretion on the part of the trial court. We agree.

In *Ward*, a trial was held regarding the issue of damages owed the defendant for land condemned by a railroad. On appeal, the defendant argued that the railroad did not present any proof that it was a legally existing corporation or that it possessed any right or authority to condemn land. The court held that the defendant waived this issue by proceeding to trial on the merits and also determined that there was some proof that the railroad was a *de facto* corporation. In addition, the court stated that "[b]y filing a cross-petition, asking to have damages assessed for the injury done to his lands not taken, defendant admits petitioner has the right to exercise the right of eminent domain." (*Ward*, 119 Ill. at 292.) In the other cases cited by the District, the defendants were held to have waived any issue as to whether there had been a failure to agree upon compensation, a necessary element to a condemnation action, by filing a cross-petition for damages to land not taken. See *County of Fayette v. Whitford* (1936), 365 Ill. 229, 232; *Chicago North Shore & Milwaukee R.R. Co. v. Chicago Title & Trust Co.* (1928), 328 Ill. 610, 617; *Alton & Southern R.R. v. Vandalia R.R. Co.* (1916), 271 Ill. 558, 566.

Defendants point out that, in all four cases cited by the District, a trial on the merits of the condemnation proceeding took place. We conclude that the determinative distinction, however, is that defendants sought and were granted leave to withdraw their cross-petition. The District acknowledges that the applicable standard is whether the trial court abused its discretion when it allowed the withdrawal of the cross-petition, but contends that there was an abuse of the court's discretion in this case. We cannot agree.

■ Here, defendants filed their cross-petition in February 1989. At that time, defendants had no basis under section 6 of the Act to challenge the District's authority to condemn the property. Section 6 of the Act (Ill. Rev. Stat. 1989, ch. 96½, par. 6309) was amended, however, effective August 21, 1989, to require the concurrence of a township prior to condemnation in some circumstances. Defendants filed their traverse and motion to dismiss approximately 2½ months later, on November 3, 1989, challenging the District's authority to condemn the property based on the amendment to the statute. The District did not argue that the traverse and motion to dismiss were precluded by the cross-petition until October 9, 1990, the date of the hearing. Under these circumstances, the trial court did not abuse its discretion in allowing defendants to withdraw their cross-petition and proceed with their traverse and motion to dismiss.

The District next argues that the trial court's finding that it lacked authority under the statute to proceed with the condemnation was against the manifest weight of the evidence. We disagree.

■ Section 6 of the Act relates to the acquisition and disposal of property by forest preserve districts in counties having a population of less than 3 million. Section 6 was amended by Public Act 86—267 to provide, in pertinent part:

"No district with a population of less than 600,000, located in a county which is contiguous to a county with a population over 2,000,000 and also located in a county which is not contiguous to either the State of Wisconsin or the State of Indiana, shall *** have the power to purchase, condemn, lease or acquire an easement in property *** for a linear park or trail in an unincorporated area without the concurrence of the governing body of the township within which the property is located." (Ill. Rev. Stat. 1989, ch. 96½, par. 6309.)

Public Act 86—267 provided that "[t]his Act takes effect upon becoming law and applies to all pending actions as well as those filed on or after its effective date." Pub. Act 86—267, eff. August 21, 1989.

This portion of section 6 was further amended by Public Act 86—1387, effective September 10, 1990, to state that the new requirement of township concurrence applied to counties "not contiguous to the State of Wisconsin" rather than to counties "not contiguous to either the State of Wisconsin or the State of Indiana." (Pub. Act 86—1387, eff. September 10, 1990.) This change does not affect this cause.

Based on the statute, therefore, forest preserve districts which fit into the description provided may not condemn property "for a linear park or trail in an unincorporated area without the concurrence of the

governing body of the township within which the property is located."
(Ill. Rev. Stat. 1989, ch. 96½, par. 6309.) The District has not dis-
puted that it fits into the description in the statute.

●■ A traverse and motion to dismiss challenge the right of a
petitioner to condemn and will result in dismissal when the petitioner
cannot show its right to condemn by proper proof. (*Lake County For-
est Preserve District v. First National Bank* (1987), 154 Ill. App. 3d
45, 49.) A corporation or department of the government only has such
powers of eminent domain as are conferred upon it by the legislature,
and the law conferring the authority must be strictly construed. (*De-
partment of Transportation v. First Galesburg National Bank &
Trust Co.* (1990), 141 Ill. 2d 462, 468-69; see also *County of De Kalb v.
Smith* (1991), 213 Ill. App. 3d 775, 777.) Eminent domain statutes are
strictly construed to protect the rights of property owners. (*City of
Oakbrook Terrace v. La Salle National Bank* (1989), 186 Ill. App. 3d
343, 348.) "When a motion to dismiss is filed challenging the author-
ity to condemn, the burden is on the petitioner to make a *prima facie*
case of the disputed allegations." *Department of Transportation*, 141
Ill. 2d at 469.

There is no dispute that the subject property is a long, narrow
parcel along the Fox River. There is also no dispute that the District's
plans for the parcel include a trail along the entire length of the prop-
erty. Nevertheless, the District contends that it presented a *prima
facie* case, which was not rebutted by defendants, that this acquisition
was not for a linear park or trail so that the statute requiring the con-
currence of the township did not apply. It points out that the terms
"linear park" and "trail" are not defined in the statute, meaning that
they must be given their ordinary meanings. The District argues that
Duerr's "uncontroverted testimony" established that a linear park
was a man-made creation, such as a converted railroad right-of-way,
and not a natural creation, such as land adjacent to a river. It also
asserts that the testimony of its witnesses established that the prop-
erty was sought for the purpose of preserving and protecting its
unique characteristics and contends that any reference to the word
"trail" in the documents and plans was for access purposes and not
as a primary purpose of the acquisition. In its reply brief, the District
argues that a trail is not a trail when it is the type of trail that allows
the public access to the piece of property and is not the primary pur-
pose for the acquisition.

We agree with the District that, if words within a statute are un-
defined, they must be given their ordinary and popularly understood
meanings. (*Ruva v. Mente* (1991), 143 Ill. 2d 257, 263.) In construing

a statute, a court should also consider the reasons for the law, the evil to be remedied, and the objects and purposes to be obtained. (*Ruva*, 143 Ill. 2d at 263.) It is obvious that the purpose of the amendment to section 6 of the Act was to restrict the authority of certain forest preserve districts to acquire certain types of property.

The District's argument essentially is that it met its burden to establish that the statute does not apply to this property because a "linear park" can only be a man-made creation and a "trail" is not an access trail. There are numerous problems with these arguments. First, the District has totally mischaracterized Duerr's testimony. He did not testify that a linear park is only a man-made creation. It is difficult to discern what Duerr was saying during his testimony regarding the distinction between the subject property and properties developed on former railroad rights-of-way. However, he never clearly stated that the distinction was whether the property was a man-made creation. Also, whatever Duerr's testimony was, it was certainly not "uncontroverted." Dyke clearly testified that a linear park can follow along a natural corridor like a river. Second, the District has cited no authority to support its unusual interpretation of the terms at issue. Third, to interpret the terms so restrictively would be to ignore the intent of the legislature to limit the authority to condemn property and to ignore the need to "strictly construe" a petitioner's authority to condemn.

We therefore must agree with the trial court that the District did not establish a *prima facie* case. We conclude that the ordinary meaning of "trail" is "trail" whether or not it is an "access trail." Even without considering Dyke's testimony, then, the District totally failed to prove that the long, narrow parcel of land along the Fox River on which it planned to place a trail which would link Voyager's Landing to the south with South End Park to the north was not being acquired for a trail. The fact that there was testimony that the District's purpose in acquiring the property was to preserve and protect the property's unique characteristics cannot change this conclusion as that would generally be the case. (See Ill. Rev. Stat. 1989, ch. 96½, par. 6308.) As we have concluded that the subject property was being acquired for a trail, we do not need to determine if it was also being acquired for a linear park. We note, however, that Dyke's definition of linear park would seem to comport with the ordinary and popularly understood meaning of the term.

The District finally argues that the amendment to the statute is unconstitutional as special legislation. It acknowledges that this issue has been raised for the first time on appeal but contends that it

should be allowed to raise the issue as the issue is one of public importance, citing *Cronin v. Lindberg* (1976), 66 Ill. 2d 47. The District has been granted leave to supplement the record on appeal and has submitted a copy of an order entered by the circuit court of Kane County in case No. 90—MR—0045, which found the amendment to section 6 of the Act unconstitutional. It has also submitted a copy of a notice of direct appeal to the Illinois Supreme Court in that case.

■■ It is well settled that issues not raised in the trial court, including constitutional questions, are waived and may not be raised for the first time on appeal. (*In re Liquidations of Reserve Insurance Co.* (1988), 122 Ill. 2d 555, 567-68; *Premo v. Falcone* (1990), 197 Ill. App. 3d 625, 633.) We are not persuaded that we should consider this issue as a matter of "public importance." The court in *Cronin* considered a question of statutory interpretation, even though it was not ruled on by the trial court, because of its public importance and because "the facts necessary to its determination are in the record before us." (*Cronin*, 66 Ill. 2d at 61.) In this case, the constitutional issue is not one of statutory interpretation; the District has not explained why this is an issue of public importance, and no facts necessary to the determination of the constitutional issue are included in the record. Also, the fact that a trial court in Kane County has found the amendment to the statute unconstitutional has no bearing on this case. "[I]t is axiomatic that an unpublished decision of a trial court in another case does not bind this court in any way." (*Home Indemnity Co. v. General Accident Insurance Co. of America* (1991), 213 Ill. App. 3d 319, 324; see also *Kennedy Brothers, Inc. v. Property Tax Appeal Board* (1987), 158 Ill. App. 3d 154, 165.) Because the issue has been waived by failing to raise it in the trial court, we do not consider it.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

REINHARD, P.J., and GEIGER, J., concur.