HINSDALE FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff-Appellee, *v.* GARY-WHEATON BANK, Trustee, *et al.*, Defendants-Appellees.—(GEORGE R. MYERS *et al.*, Defendants-Appellants.)

Second District    No. 80-840

Opinion filed October 2, 1981.

Leigh R. Pietsch, of Nelson, Jerz, Pietsch, O'Leary, Walters and Schroeder, of Wheaton, for appellants.

Dominic J. Mancini, of Palmer, Blackman, Mancini and Riebandt, of Hinsdale, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The relationship between a party who claims an equitable title to real estate under a contract with a builder for the purchase of a home to be erected on the builder's lot, and the lending institution which seeks to foreclose an interim construction loan made to the builder, creates the issues in this appeal.

George M. Myers and Rosemarie E. Myers, his wife (Vendees), entered into a contract on January 26, 1976, with Warner-Dutzi, Inc. (Vendor), for the purchase of a lot on which the Vendor was to construct a dwelling for the total sum of $46,100. The sum of $2,000 was deposited as earnest money, and the contract further provided that construction was to proceed after the Vendees had received a commitment for financing and was to be completed and closed on May 28, 1976. The Vendees received a commitment for a mortgage loan from Hinsdale Federal Savings & Loan Association (Lender) in March of 1976, and signed the note and the mortgage, which the Lender recorded. The home was under roof by October of 1976 at which time the Vendor applied for a loan from the Lender to complete construction. Vendor executed mortgage documents on November 3, 1976, which were recorded on November 5. Vendees did not join in this mortgage nor were they asked to subordinate their purchase contract. Although that contract was not recorded a copy was on file with the Lender. The Lender claims that it subsequently disbursed $33,315.52 under the construction mortgage to the Vendor and subcontractors.

The Vendees on September 14, 1978, being dissatisfied with the progress of the construction, sued the Vendor to specifically enforce their initial contract of purchase and construction. The Lender was not named as a party defendant in that suit. An order was entered on April 19, 1978, which reflected a settlement between defendants and the Vendor under which the Vendor agreed to complete construction on or before July 1, 1978, and the Vendees agreed to pay the balance of the purchase price. On September 14, 1978, a second agreed order was entered in the circuit court of Du Page County which provided the Vendor an additional 30 days in which to complete construction and further provided that if construction was not completed by that date the Vendees could take possession and complete construction, deducting any reasonable costs from the

balance of the purchase price. The Vendees subsequently took possession of the premises and claimed to have expended between $22,000 and $24,000 in the completion of the home.

By letter dated June 30, 1977, the Lender advised Vendees that because they had failed to close the loan in accordance with the commitment "we will have to cancel" the commitment. It further appears that the Lender recorded a release of the mortgage on August 3, 1977, which the Vendees claim was without their knowledge or consent.

The Vendor defaulted on the construction loan, and the Lender instituted a suit for foreclosure on May 24, 1979, naming as defendants all parties with a recorded interest and "Unknown Owners." An order of default was entered against "Unknown Owners" on December 4, 1979. On December 19, 1979, a decree of foreclosure and sale was entered.

The Vendees, on January 19, 1980, filed a motion to vacate the decree of foreclosure and sale, asserting their interest under the January 26, 1976, contract with the Vendor. The motion was granted. The Vendees' further motion to dismiss the complaint for foreclosure, however, was denied. Vendees subsequently answered the complaint and advanced as affirmative defenses, that they were entitled to the equity of redemption and further that only $15,000 of the construction loan was used on the subject property. They claimed to have no knowledge of the construction loan until learning of the foreclosure action. The trial court struck both defenses and entered summary judgment for the Lender from which Vendees appeal.

The principal issues are whether the Vendees have shown an ownership interest in the property under the doctrine of equitable conversion; and, if so, whether their equitable interest is superior to the Lender's subsequent mortgage.

We first conclude that the Vendees are the equitable owners of the subject property. Generally, a contract buyer becomes the equitable owner of the property upon execution of the installment contract. (*Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 257.) The doctrine will not be applied if the contract of sale is not enforceable because a condition precedent, the occurrence of which is not governed by either party to the contract, is unfulfilled (*Dodson v. Nink* (1979), 72 Ill. App. 3d 59, 65); or if the party who claims the benefit of the doctrine is in breach of contract through his own failure to perform. *Illinois Fair Plan Association v. Astirs, Inc.* (1980), 89 Ill. App. 3d 422, 425.

The purchase and construction contract placed two initial conditions upon the Vendees. They were initially to tender an earnest money deposit of $2,000 and provide proof of financing prior to any performance on the part of the Vendor. Each of these conditions was fulfilled. It was then encumbent upon the Vendor to complete construction of the premises by

May 28, 1976. Although the Vendees pursued their remedies for breach of contract, the result was a settlement in which there was a written modification extending the contract for 30 days from September 14, 1978. The construction was not completed as agreed by the extended date. Thereupon the Vendees took possession and completed construction pursuant to the order of the Du Page County court.

■■ A party who has fulfilled all outstanding conditions is entitled to the remedy of equitable conversion. (See *Lombard v. Chicago Sinai Congregation* (1872), 64 Ill. 477, 486.) Thus, the Vendees were, in equity, the owners of the subject property prior to the execution of the mortgage being foreclosed.

■■ We further conclude that, under the particular circumstances of this case, the Vendees' equitable interest under their unrecorded contract was superior to the interest of the Lender evidenced by the mortgage subsequently recorded.

As previously noted, the equitable interest of the Vendees accrued prior to execution of the construction loan. The Lender, at the time of the execution of that loan, admittedly had actual knowledge of the unrecorded purchase and construction contract. The Lender explains that it did not ask the Vendees to subordinate their interest to that of the Lender because it concluded that the purchase and construction agreement had come to an end upon the Vendor's failure to complete the dwelling as specified in the contract. However, the conclusion was unwarranted and offers no support to the Lender's argument.

■■ The conclusion that the Lender is charged with knowledge of the prior equitable conversion and must take subject to it does not completely dispose of the issues. The Vendees argue that the Lender merely stands in the position of the Vendor and is only entitled to the balance of the purchase price as that is all the Vendor could have received. We do not agree. The fact that the mortgagee must take into account, under our disposition, the priority of the interests of the Vendees as equitable owners of the property does not affect the validity of the mortgage. The mortgage remains a lien on the property which may be foreclosed. But we also cannot agree with the argument of the Lender that, at best, the Vendees have only a right to redeem by paying off the Lender's mortgage.

We have not encountered a comparable case among the Illinois authorities but find some instruction in authorities from other jurisdictions.

In *Tucson Federal Savings & Loan Association v. Sundell* (1970), 106 Ariz. 137, 472 P.2d 6, the Supreme Court of Arizona addressed a somewhat similar situation. There, the vendee entered into a contract to purchase a lot with a home to be built by the vendor. The contract was

contingent upon the vendee obtaining an F.H.A. loan, which he did. The vendor was a large developer with a relationship with the bank that permitted him to make out his own loan and mortgage forms, which he did. The bank and the vendor knew the loans were only to be extended to lots that had been sold. The lender loaned $11,400 on the property. Thereafter the vendor became insolvent and defaulted on the lender's mortgage. The evidence showed that the lender had seen the contract for purchase before it loaned the money to the developer. The court held that the vendee had an equitable interest in the land and that the lender was not a bona fide purchaser since it had knowledge of this. To the extent that payments were made by the vendee before the vendee had actual knowledge of the mortgage interest of the lender, the vendee was held to have a lien priority on the proceeds of the land which was being sold.

In *Fikes v. First Federal Savings & Loan Association* (Alas. 1975), 533 P.2d 251, a contractor was contacted by a prospective purchaser in order that the builder might obtain a lot and erect a duplex home. The vendee signed a contract for the lot with the vendor through the builder's efforts, and the builder paid the earnest money out of a fund paid to him by the vendee. The vendee and the builder then went to the lender to obtain a construction loan, the application listing the vendee as mortgagor. The builder obtained a development loan for this and other property. The builder took title to the subject property. The lender paid out money under the loan, which the builder diverted to other property. The money was fully paid out, but the duplex was not finished. The lender instituted foreclosure proceedings. The vendee sued to declare his interest prior to the lender and to limit the lender to the amount actually spent on the subject property. The court held that the vendee obtained an equitable interest in the lot when the earnest money agreement was signed with the vendor. The earnest money agreement was not recorded, but the court found that the lender had knowledge since the record showed that both the vendee and the builder participated in the loan procedures; and, thus, that the lender's interest was subordinate to that of the vendee. The court further concluded that the lender permitted misapplication of loan proceeds and therefore could only recover the amount properly disbursed. 533 P.2d 251, 258-61. See also *Wayne Building & Loan Co. v. Yarborough* (1967), 11 Ohio St. 2d 195, 228 N.E.2d 841.

In *Wayne*, the Ohio Supreme Court held that the vendee acquired an equitable interest under its purchase contract which was prior to the interest of a lender charged with actual knowledge. (11 Ohio St. 2d 195, 202-03, 228 N.E.2d 841, 847.) It further concluded that the vendee was entitled to recover, as against the mortgagee, payments made by him prior to his knowledge of the construction loan. 11 Ohio St. 2d 195, 204, 228 N.E.2d 841, 848.

■■ In this case, the Vendees sought to show payments to complete the construction in the amount of $22,000-$24,000. It is not entirely clear, however, as to when the Vendees first had actual knowledge of the construction loan. We conclude that the Vendees are entitled to an equitable lien on the property for all money they have expended toward the fulfillment of the contract without actual knowledge of Hinsdale Federal's mortgage.

The briefs of the parties relate only to the propriety of the order of September 23, 1980, striking the affirmative defenses and granting a summary judgment for foreclosure. The record, however, includes further proceedings resulting in a foreclosure suit. The lender acquired title, by its bid of $48,094.31, the Vendees' motion for a stay having been previously denied.

We therefore reverse that portion of the judgment of the trial court which struck the Myers' first affirmative defense and remand the cause for further proceedings. On remand, the trial court is directed to hear evidence and determine how much the Myers expended on the contract and for improvements prior to actual knowledge of the Hinsdale Federal's mortgage. The amount so determined shall be an equitable lien prior to the Lender's interest in the proceeds of the foreclosure sale.

■■ The request of the Vendees for specific performance is denied. We find no authority for that position. The Lenders do not stand in the position of the Vendor. Their mortgage is a valid lien, although not prior to the proven equitable lien of the Vendees.

The portion of the judgment of the trial court which struck the second affirmative defense (improper allocation of Lender's funds) is moot. As the Vendees have a prior interest in the foreclosure sale proceeds, they cannot be injured by a failure, if any, to reduce the subsequent lien on the proceeds.

Reversed and remanded with directions.

LINDBERG and UNVERZAGT, JJ., concur.