COLE TAYLOR BANK, as Successor to Cole Taylor Bank/Main, Plaintiff-Appellee, v. COLE TAYLOR BANK *et al.*, Defendants (Alan Turover *et al.*, Counterplaintiffs-Appellants; Cole Taylor Bank, as Successor to Cole Taylor Bank/Main, *et al.*, Counterdefendants-Appellees).

First District (6th Division)   No. 1—90—3450

Opinion filed January 17, 1992.—Rehearing denied April 24, 1992.

Gottlieb & Schwartz, of Chicago (Loren J. Mallon, Stanton Schuman, and Gregory A. McCormick, of counsel), for appellants.

Neal, Gerber & Eisenberg, of Chicago (Joel M. Hurwitz, David J. Krupp, and Lawrence M. Benjamin, of counsel), for appellees.

JUSTICE LaPORTA delivered the opinion of the court:

Alan and Sara Turover paid Jack Lofstrom $130,000 as the down payment on a house he promised to build for them in Glencoe. The house was never built. The Turovers sued Lofstrom and a *lis pendens* notice was recorded against the property because Lofstrom was the beneficial owner of the land trust that held title to the property. After the construction contract was signed but before the Turovers sued for breach of that contract, Lofstrom obtained a mortgage on the property. The Turovers won their suit against Lofstrom for breach of contract and a $291,010.10 judgment was entered against Lofstrom. When Lofstrom failed to pay on the mortgage, the bank foreclosed and Lofstrom filed for bankruptcy protection. This action deals only with the foreclosure. The Turovers appeal the trial court's refusal to modify the foreclosure judgment in which the judge placed the Turovers' lien third in priority behind a demolition lien held by the Village of Glencoe and the mortgage lien held by Cole Taylor Bank.

The Turovers contend their lien against the property is superior to the lien held by Cole Taylor because it is an equitable lien that was entered into with the bank's knowledge prior to the bank's authorizing a mortgage on the property.

The Turovers raise two issues on appeal: (1) whether they possess an equitable lien on the Glencoe property that is superior to the interests of Cole Taylor Bank; and (2) whether the trial court abused its discretion by refusing to modify the judgment of foreclosure to reflect that the Turovers' lien was superior to the bank's lien.

The record establishes that the Turovers entered into a written contract with Jack Lofstrom, then the record owner, on or about October 2, 1987, for the purchase of a parcel of property in Glencoe and the construction of a single-family home there. They paid Lofstrom $130,000 as a down payment to be applied at closing. The home was to be completed by March of 1988.

With the construction still incomplete on April 1, 1988, Lofstrom placed the property into a land trust at Cole Taylor Bank under trust agreement No. 88–131. On April 26, 1988, Lofstrom mortgaged the property, executing a $275,000 secured revolving note with Cole Taylor Bank. The note was secured by a trust deed for the property prepared by Cole Taylor, the same bank which held legal title in the land trust in which Lofstrom held the beneficial interest. The trust deed was recorded April 29, 1988. Construction was never completed, the closing did not occur, nor was the property ever conveyed to the Turovers.

Eight months after the Cole Taylor mortgage to Lofstrom, on December 30, 1988, the Turovers filed suit against Lofstrom for breach of contract. A *lis pendens* notice of the action was recorded against the property on or about the same day. On March 2, 1990, a $291,010.19 judgment was entered against Lofstrom and in favor of the Turovers to compensate them for their $130,000 down payment, costs and attorney fees.

On December 1, 1989, Cole Taylor Bank filed suit to foreclose on the defaulted Lofstrom mortgage. The Turovers were named as defendants in the action. With the exception of the Turovers, Cole Taylor and the Village of Glencoe, all other interested party defendants, including Lofstrom, defaulted on the foreclosure action by their failure to appear in court. The Village sought $14,761.55 as payment for its demolition work on the property and the bank has never disputed that all such municipal liens have first priority by statute. At the hearing on the foreclosure, the trial court was required to con-

sider only the priority between Cole Taylor, as the mortgage holder, and the Turovers, who held a judgment against Lofstrom.

On March 15, 1990, the Turovers filed an answer in the foreclosure action and a counterclaim requesting an adjudication on the priority of their interest in the Glencoe property. The answer and the counterclaim referred to the Turovers' contract with Lofstrom, his failure to build the house contracted for and the subsequent judgment entered against Lofstrom. The judgment against Lofstrom was referred to in the counterclaim only as a "lien by judgment" on the property, not as an "equitable lien" as alleged on appeal. The prayer of the counterclaim sought: "(1) an adjudication of the priority of their lien by judgment and inclusion of such adjudication in any Judgment Foreclosure and Sale entered in this cause; and (2) such other and further relief as this Court may deem just and equitable." Neither the answer nor the counterclaim specifically alleged that the Turovers' lien was superior to the bank's mortgage lien. The bank did not file an answer to the counterclaim.

Approximately one month later, Lofstrom filed a petition under chapter 11 of the United States Bankruptcy Code and an automatic stay, pursuant to law, was issued against the parties involved in the foreclosure action because the property was an asset of the bankruptcy estate.

On May 9, the bank filed its motion for judgment on the pleadings in the foreclosure action. The motion asked the court to set the priority on the property liens by placing the village's demolition lien first, the bank's mortgage second and the Turovers' judgment third. The motion stated that: "On its face the [Turovers'] counterclaim shows that the lien asserted therein is inferior to plaintiff's mortgage lien which is the subject of plaintiff's complaint. Plaintiff has no objection to Turovers' lien provided that it is subordinate to plaintiff's interest." The Turovers were given until June 1 to file a response to the motion, but they did not file a response.

On May 18 the bankruptcy court lifted the automatic stay in an order that stated:

"The automatic stay shall be lifted so as to allow Cole Taylor Bank to proceed on the action entitled *Cole Taylor Bank v. Cole Taylor Bank, et al.*, presently pending in the Circuit Court of Cook County, No. 89 CH 10932 and to foreclose its mortgage interest and sell the property commonly known as 290 Greenwood Avenue, Glencoe, Illinois. The automatic stay is lifted on the condition that the validity and the amount of the lien asserted by Alan and Sara Turover against the property shall not

be determined in the foreclosure proceeding, except that the interest of the Turovers, as determined by the Bankruptcy Court or other appropriate tribunal, shall be paid from the remainder of the proceeds from the sale after all other superior liens have been satisfied.

The order lifting the automatic stay shall be entered retroactive to a date prior to the entry of the Default Order entered against Jack A. Lofstrom on April 30, 1990 in the foreclosure proceeding, or in the alternative, it is ordered that the automatic stay shall not have the effect of voiding the Default Order entered against Jack A. Lofstrom on April 30, 1990."

On June 8, 1990, the Turovers' counsel appeared in court along with counsel for the bank and the Village of Glencoe. The trial judge entered a judgment of foreclosure determining priority of the liens on the property in the order of the village first, the bank second and the Turovers third. The order stated, in pertinent part, "that the material allegations of the Counterclaim of the Turovers are not determined by the present Judgment, except to the extent that if, and when, such material allegations are proven true and correct in Bankruptcy Court or other appropriate proceeding, the interest of the Turovers shall attach and be satisfied from the remainder of the proceeds of sale, after the liens of the Village of Glencoe and the Bank have been paid."

Turovers' counsel did not object to the judgment, but the following colloquy occurred before it was entered:

"[Bank counsel]: But there is no dispute to whatever their lien is, they come third in line, and we had the bankruptcy stay lifted, *recognizing that they would come third in line,* and whatever the excess proceeds were, they would be held in an escrow account.

[Judge]: And you do reflect that in this proposed judgment order?

[Bank counsel]: Yes.

[Judge]: And give them leave to file documentation of the size of their lien, is that what you are saying?

[Bank counsel]: What will happen is they need to get the stay lifted from the Bankruptcy Court, recognizing their lien or authorizing them to draw on their lien, whatever their lien is. All we are saying is that this action does not determine what their lien is. We are not saying it is not determined. They obviously claim it was determined because they got a judgment. We are just saying that this judgment of foreclosure that is attached as Exhibit D, and I have made extra copies, doesn't de-

termine what the lien is, and it is going to be held in escrow subject to whatever the propert [sic] determination is.

[Judge]: What is going to be held in escrow, the whole thing?

[Bank counsel]: The excess funds after the Village of Glencoe is paid and after the Bank is paid, the excess proceeds will be held for the Turovers' benefit subject to them getting the stay lifted.

[Judge]: Who is going to make that kind of a bid, though? How much is your lien for?

[Turovers' counsel]: About twice the value of the property.

[Bank counsel]: We don't know that there is going to be enough, but every day this waits the Village of Glencoe has more costs to put in this property to secure it, and the longer we wait, the less equity there will be for anyone.

[Judge]: Your lien is already reduced to a judgment?

[Turovers' counsel]: But I haven't had the Bankruptcy Court lift the stay on my further action, so that is all I have to do is get the Bankruptcy court to lift my stay and I could proceed to correct it here.

[Judge]: How are you going to collect it, except by bidding it in yourself?

[Turovers' counsel]: That is what I am going to do, or if there are excess funds and I am the third lien, the court allows me to keep the money.

[Judge]: Realistically, there is [sic] not going to be excess funds. I shouldn't say that. I don't have any idea what the place is worth.

[Turovers' counsel]: The rumors around Glencoe, about $350,000. My judgment was 321.

[Bank counsel]: It is anywhere from—

[Judge]: I know what you two want me to do. What are you asking me to do?

[Turovers' counsel]: Nothing. I am just as anxious for the sale now because the longer we wait—

[Judge]: Then we don't really have an argument. I will just do it. But you have to get your lien lifted and get your proof up into this by amendment to this foreclosure.

[Turovers' counsel]: I will be back in this court to ask for an amendment to this order.

[Judge]: Forthwith.

[Turovers' counsel]: As soon as the bankruptcy judge will let me.

[Judge]: So we don't have the difference I thought we did.

[Bank counsel]: It would be a supplement as provided for in the order. The order recognized there would be a subsequent order directed to the proceeds. The judgment is attached. I made one amendment."

After a brief discussion about other matters, the court hearing ended with the Turovers' counsel stating: "I will be back pretty soon."

On July 3, 1990, the Turovers filed their motion to modify the order of foreclosure. They contended that their lien was equitable in nature and therefore was superior to the mortgage lien held by the bank. The Turovers contended (1) they were unable to fully participate in the June 8 hearing because their hands were tied by the automatic stay in Lofstrom's bankruptcy action, and (2) the parties and the court contemplated a modification of the judgment after the automatic stay was lifted.

In response the bank contended that the Turovers (1) agreed to the order of priority at the June 8 hearing, (2) were estopped from denying the superiority of the bank's mortgage, (3) had waived such a claim, and (4) could not modify the judgment without first amending their answer and counterclaim on the foreclosure action to allege that they held an "equitable" lien and then prove such allegation.

On October 4, the bankruptcy court's automatic stay with regard to the Turovers' claim against Lofstrom was lifted and the parties appeared before the State trial judge shortly thereafter on the Turovers' motion to modify the judgment of foreclosure. When the trial judge denied the Turovers' motion to modify, the Turovers appealed, contending that the court erred in refusing to modify the judgment of foreclosure to reflect that the Turovers' prior equitable lien on the Glencoe property was superior to the interests of the bank.

On appeal the bank contends that the Turovers hold no interest in the land because Lofstrom was not the title holder to the property but held only a beneficial interest in the land trust. The bank argues that the Turovers could not have acquired an equitable lien against the property when they do not allege that they contracted with the land trust which was the legal titleholder to the property. The bank contends that the Turovers therefore have failed to state a claim for an equitable lien.

■ In an Illinois land trust, unlike at common law, the trustee holds both legal and equitable title while the beneficiary retains only a

personal property interest. *Paine/Wetzel Associates, Inc. v. Gitles* (1988), 174 Ill. App. 3d 389, 393, 528 N.E.2d 358.

■ The bank cites *Marshall Savings & Loan Association v. Chicago National Bank* (1965), 56 Ill. App. 2d 372, 206 N.E.2d 117, for the proposition that the beneficiary of a land trust has no interest in the realty and any lien created against the land trust beneficiary is not an encumbrance on the realty. (*Marshall*, 56 Ill. App. 2d at 379.) We note, however, that *Marshall* was overruled by *First National Bank Trust No. 11–1317 v. Oldenburg* (1981), 101 Ill. App. 3d 283, 427 N.E.2d 1312, which states that the beneficiary of a conventional land trust may enter into a valid contract to convey title to the trust property, when acting in his capacity as beneficiary, if the trust agreement vests in him the sole right to direct the trust to convey title. *First National*, 101 Ill. App. 3d at 287.

A beneficiary cannot encumber the property with a lien except where the trust agreement vests in the beneficiary the sole right to direct the trustee to convey title. (*Paine/Wetzel*, 174 Ill. App. 3d at 393-94.) The bank contends that the Turovers have failed to allege Lofstrom possessed such authority.

■ The Turovers contend their interest in the property arose prior to the creation of the land trust and the mortgage lien of Cole Taylor, that they held a judgment against Lofstrom and therefore they possessed an equitable lien on the property that should have taken priority over the bank's mortgage. We agree with the Turovers and find the bank's argument flawed. Lofstrom contracted with the Turovers in October of 1987, six months before Lofstrom placed his land into a land trust and prior to Lofstrom's mortgage with the bank.

Having determined that Lofstrom could legally bind his interest in the property, we must determine whether the Turovers secured an equitable lien on the Glencoe property.

■ The appellate court decision in *W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1985), 132 Ill. App. 3d 260, 477 N.E.2d 513, details what conditions must exist for the court to enforce an equitable lien:

"An equitable lien is the right to have property subjected to the payment of a claim. It is neither a debt nor a right of property, but a remedy for a debt. [Citations.] The imposition of an equitable lien arises in two situations: first, where the parties express in writing their intention to make a particular property, real or personal, or some fund the security for a debt, or where there has been a promise to convey or assign the property as

security [citations]; and, second, equity has also recognized similar liens without an express agreement between the parties which arise wholly from general considerations of fairness and justice, such as where a party has made improvements on the property of another. [Citations.] In either case, the essential elements of an equitable lien are (1) a debt, duty or obligation owing by one person to another, and (2) a *res* to which that obligation fastens." *W.E. Erickson*, 132 Ill. App. 3d at 269-70, 477 N.E.2d at 521.

■ The Turovers contend they obtained an equitable lien on the Glencoe property at the time they signed the contract with Lofstrom. They argue that their lien has priority because it was created before the bank executed its note and trust deed which created the basis of the bank's foreclosure action. Generally a lien which is first in time has priority and is entitled to prior satisfaction out of the property it binds. *First State Bank v. De Kalb Bank* (1988), 175 Ill. App. 3d 812, 817, 530 N.E.2d 544.

The Turovers contend that their case is factually identical to the situations articulated in *Hinsdale Federal Savings & Loan Association v. Gary-Wheaton Bank* (1981), 100 Ill. App. 3d 746, 427 N.E.2d 963, where the court held that the buyers were entitled to an equitable lien on the property they contracted for after a bank foreclosed on the subsequent mortgage.

In *Hinsdale*, George and Rosemary Myers signed a contract with Warner-Dutzi, Inc., to buy a lot on which Warner-Dutzi would build them a home. They paid a deposit and when the home was under roof, Warner-Dutzi applied for a loan from Hinsdale Federal Savings & Loan Association to complete construction. A copy of the Myers' contract with Warner-Dutzi was placed in the loan file with Hinsdale.

When construction did not occur as fast as the Myers anticipated, they sued Warner-Dutzi claiming breach of contract, and the court entered two orders reflecting agreed-upon dates for completion. Warner-Dutzi did not meet those completion dates and the Myers took possession of the premises, spending between $22,000 and $24,000 to complete the home.

Warner-Dutzi defaulted on the mortgage and Hinsdale sued to foreclose on the loan. A decree of foreclose and sale was entered but the Myers successfully had the order vacated, asserting their interest under the house construction contract. The trial court, however, denied the Myers' motion to dismiss the foreclosure action and, after a hearing, entered summary judgment for Hinsdale.

The Myers appealed, raising the identical issues presented here, *i.e.*, whether the contract purchaser has an ownership interest in the property under the doctrine of equitable conversion and whether that interest is superior to the subsequent mortgage.

The *Hinsdale* court held that the Myers were equitable owners of the property because generally a contract buyer becomes the equitable owner of the property upon execution of the installment contract with its owner. (*Hinsdale*, 100 Ill. App. 3d at 748.) The court further held that the Myers' equitable interest under their unrecorded contract was superior to the interest of Hinsdale as evidenced by the mortgage subsequently recorded. *Hinsdale*, 100 Ill. App. 3d at 748.

In this case, the Turovers allege that after the bankruptcy stay was lifted with respect to their counterclaim, the trial judge failed to modify the foreclosure judgment to reflect the true facts alleged in the counterclaim. Among them, that: (1) the Turovers had a judgment against Lofstrom for breach of contract; (2) the lien attached to the property; (3) the Turovers acquired their lien prior to the bank's lien; and (4) the bank had actual knowledge of the Turovers' interest. The Turovers argue that had the trial judge recognized these facts, he would have modified the judgment of foreclosure to reflect the priority of their lien over the bank's lien.

■ Equitable liens have been imposed where contracts manifested the intent that particular property or funds be security for debts wherever there has been a promise to convey or assign the property as security. *Uptown National Bank v. Stramer* (1991), 218 Ill. App. 3d 905, 907-08, 578 N.E.2d 1165.

■ We find the Turovers acquired an equitable interest in the Glencoe property at the time they entered into the contract with Lofstrom, the legal owner, on October 2, 1987. The land trust was created six months later on April 1, 1988. Although the bank alleges that Lofstrom had no authority to enter into the construction and sale agreement with the Turovers, this argument is based on the false premise that the land was held in land trust at the time the contract was executed.

The Turovers filed a *lis pendens* notice on the property at the time they filed suit against Lofstrom on December 30, 1988, the notice being filed one year before the mortgage foreclosure. The bank was aware of the Turovers' interest in the property at the time of filing its mortgage foreclosure suit on December 1, 1989, because they named the Turovers as a party in interest.

We must conclude therefore that the Turovers' equitable interest in the Glencoe property arose at the time they signed the construction

contract on October 2, 1987, prior to any interest acquired by the bank by reason of the mortgage.

Next, we consider whether the trial court erroneously refused to modify the judgment of foreclosure to reflect that the Turovers' lien was superior to the bank's lien.

The Turovers contend that they were prevented from pursuing their right to a priority lien over the bank because of the bankruptcy stay. The Turovers cite the United States Bankruptcy Code, which states, in pertinent part: "[A] petition filed under [chapters 11, 13 or 7] of this title, *** operates as a stay, applicable to all entities, of— *** (4) any act to create, perfect, or enforce any lien against property of the estate; (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such a lien secures a claim that arose before the commencement of the case under this title; (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title" (11 U.S.C. §362(a) (1988)).

The Turovers contend that the automatic stay was intended to prevent creditors from obtaining superior interests in property to the detriment of other creditors. (*In re C.C.L. Construction, Inc.* (N.D. Ill. 1983) 32 Bankr. 693, 697.) They contend they would have risked contempt or sanctions for violating the stay if they had proceeded with their counterclaim while the stay was pending, even if they considered their action of violating the stay to be justified. *In re Josephs* (N.D. Ill. 1988), 85 Bankr. 500.

The Turovers contend that they were constrained by the language of the bankruptcy court's order which lifted the stay only with regard to the bank's foreclosure action. The order provided that the stay was lifted "on the condition that the validity and the amount of the lien asserted by Alan and Sara Turover against the property shall not be determined in the foreclosure proceeding, except that the interest of the Turovers, as determined by the Bankruptcy Court or other appropriate tribunal, shall be paid from the remainder of the proceeds from the sale after all other superior liens have been satisfied."

The Turovers argue that they were "forced to acquiesce" to entry of the foreclosure judgment because of the language in the stay. They argue that they adequately protected their right to seek the modification by filing their motion to modify within 30 days of the judgment. Because the automatic stay was still in full force, however, they argue that they could not and did not proceed on the motion until after the stay was lifted. The Turovers contend that the trial court had the ability to amend its order (Ill. Rev. Stat. 1989, ch. 110, par. 2—1203) and

should have done so after the automatic stay was lifted by the bankruptcy court with regard to the Turovers' counterclaim. The Turovers contend, therefore, that the trial judge's refusal later to modify the foreclosure judgment was an abuse of discretion.

The bank argues that no evidence in the record establishes that the Turovers were compelled by the automatic stay to consent to entry of the foreclosure judgment. The bank notes that the automatic stay did not prevent the Turovers from defending their alleged priority interest in the property at the June 8 hearing because the agreed order lifting the stay was entered retroactive to the date prior to the default order against Lofstrom in the mortgage foreclosure. The bank notes that, in addition, the Turovers did not let the stay interfere with their filing the notice of appeal during the time period when they allege they were forced into inactivity because of the stay.

We note that the Turovers' attorney was present, and indeed participated, at many if not all hearings regarding the foreclosure and apparently did not find this to be a breach of the bankruptcy stay order.

The bankruptcy statute by its plain language affords protection from actions "against the debtor." The Turovers did not need to litigate their right to a judgment against Lofstrom, the debtor. Their counterclaim stated that they already held a judgment against Lofstrom. Therefore, their only unfinished business was with the bank with regard to the priority of the liens.

The legislative purpose of the automatic stay is "to permit the debtor to organize his or her affairs without creditor harassment and to allow orderly resolution of all claims. *** It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." *Fortier v. Dona Anna Plaza Partners* (10th Cir. 1984), 747 F.2d 1324, 1330.

■ We find that the bankruptcy stay provided protection for Lofstrom but did not afford the Turovers the right to sit idle with regard to the priority of their lien. The bankruptcy court lifted the stay with regard to the bank's foreclosure action. The Turovers' counterclaim challenged the bank's interest and not the interest of Lofstrom, the debtor. Accordingly, we find the Turovers were not prevented by the stay order from pursuing their equitable lien claim on the property and alleged right to a priority superior to that of other lien interests on the proceeds of the ultimate land sale.

The bank offers other arguments why the Turovers are not entitled to relief regardless of the bankruptcy stay: (1) the Turovers' consent to entry of the mortgage judgment was voluntary; (2) the

Turovers are estopped from asserting an equitable lien; (3) the Turovers waived their claim of an equitable lien; and (4) any modification of the foreclosure judgment would first require an amendment of the Turovers' counterclaim and adjudication of its claims.

First, the bank contends that the Turovers agreed to the foreclosure judgment and are therefore bound by the agreement. In support of its argument, the bank points to the transcript of the June 8 hearing where the bank's attorney stated his understanding of the priority of the liens. The bank argues that all three attorneys present "agreed" on the priority of the liens. The Turovers' attorney stated that he had no objection to entry of the judgment and was anxious for the sale.

The bank argues that this is evidence of a settlement agreement between the parties and that a settlement should not be set aside absent a showing of fraud or mistake. (*Adler Center for Behavior Modification, Inc. v. Chicago Title & Trust Co.* (1984), 129 Ill. App. 3d 1024, 1027, 473 N.E.2d 378.) The bank argues that Turovers' discovery of a belated theory that their claim was an "equitable lien" and not merely a lien is not a mistake considered sufficient to set aside a settlement agreement. (*Towne v. Town of Libertyville* (1989), 190 Ill. App. 3d 563, 570, 546 N.E.2d 810.) A unilateral mistake is insufficient to invalidate an agreement compromising and settling a disputed claim. *Turner v. Cosmopolitan National Bank* (1989), 180 Ill. App. 3d 1022, 1030, 536 N.E.2d 806.

The bank argues that the Turovers' explanation is an after-the-fact rationalization for their actions and inconsistent with the fact that the Turovers did not allow the stay to prevent them from filing their motion to modify while the stay was still in effect. The bank notes that the Turovers do not even allege the trial judge erred at the June 8 hearing when the judgment was entered.

The Turovers contend the mortgage foreclosure was not a "compromise" or settlement and therefore the cases cited by the bank in support are distinguishable. The Turovers argue that the record establishes their attorney's intent to return and seek a modification of the order when the automatic stay was lifted. They argue that this belies the bank's contention that they agreed to the June 8 order.

Second, the bank argues that even if the Turovers did not agree to the order of priority, they are now estopped from asserting their claim of an equitable lien because the bank relied on the Turovers' representations to its detriment. The bank argues that it waived its potential deficiency claim against Lofstrom in the bankruptcy proceeding and agreed not to contest the Village of Glencoe's assertion

of a first lien interest in the property. The bank argues that it would not have taken on the burden of selling the property if it was not assured of receiving the second priority interest in the property. We find no support in the record for these contentions as to the bank's motivations for its actions. The bank argues that at a minimum the Turovers had an obligation to inform the court and the bank that they intended to contest the priorities as set forth in the judgment.

The bank argues that the only modification the Turovers actually intended to seek was an inclusion of their exact interest in the property, once determined. The bank points to the language of the June 8 foreclosure judgment which states "that *the material allegations of the Counterclaim of the Turovers are not determined* by the present Judgment, except to the extent that if, and when, such material allegations are proven true and correct in Bankruptcy Court or other appropriate proceeding, the interest of the Turovers shall attach and be satisfied from the remainder of the proceeds of sale, *after the liens of the Village of Glencoe and the Bank have been paid.*" (Emphasis added.)

The Turovers argue that estoppel is an equitable defense that arises only when a party's statement or conduct misleads another into acting to his detriment in reasonable reliance on that belief. (*American States Insurance Co. v. Action Fire Equipment, Inc.* (1987), 157 Ill. App. 3d 34, 509 N.E.2d 1097.) The Turovers argue that the bank has offered no evidence of any action by the Turovers that could be construed as misleading the bank. Nor is there evidence the bank reasonably relied on any words or action by the Turovers.

The Turovers argue that no evidence in the record supports the bank's claim that in reliance on the order the bank waived its deficiency claim against Lofstrom in the bankruptcy action. The bank's reference to the record pinpoints only the bank's own response to the Turovers' motion to modify the foreclosure judgment. They argue that if such reliance existed, it was not a reasonable reliance because the Turovers' counsel indicated an intention to seek modification of the foreclosure judgment as early as June 8, the day the judgment was entered.

We find the bank's estoppel argument unpersuasive because the record evidences no reliance on the part of the bank.

Finally, the bank contends the Turovers waived their right to claim a priority over the bank's lien by failing to claim such superiority in its counterclaim, its answer to the bank's foreclosure action or at any of the hearings.

The bank argues that no such claim of priority was included in the counterclaim because in fact the counterclaim was based on the judgment entered against Lofstrom, and not on an equitable lien theory. The bank notes that the counterclaim does not mention the word "equitable" in describing the Turovers' interest in the property.

The bank argues that the Turovers' failure to deny the bank's superior lien in their answer to the foreclosure complaint can be construed as an admission pursuant to section 2—610(d) of the Illinois Code of Civil Procedure; that section states: "Every allegation, except allegations of damages, not explicitly denied is admitted, unless the party states in his or her pleading that he or she has no knowledge thereof sufficient to form a belief, and attaches an affidavit of the truth of the statement of want of knowledge, or unless the party has had no opportunity to deny." (Ill. Rev. Stat. 1989, ch. 110, par. 2—610(b).) We note, however, that the failure to specifically deny a conclusion alleged in a complaint does not operate as an admission of its truth. *Florsheim v. Travelers Indemnity Co.* (1979), 75 Ill. App. 3d 298, 393 N.E.2d 1223.

In addition, the bank argues that the Turovers had opportunities to assert their claim before entry of the judgment June 8 but failed to do so. When the bank moved for a judgment on the pleadings in its foreclosure action, the trial court granted the Turovers three weeks to file a response, but the Turovers filed no response. The bank's motion stated that the order of priority for the liens was the Village of Glencoe first, the bank second and the Turovers third.

The Turovers argue that their counterclaim specifically reserved for them their right to adjudicate the priority of their lien and that therefore the bank's argument is inappropriate. A waiver requires a clear, distinct intent to relinquish a known right. *Village of Orland Park v. First Federal Savings & Loan Association* (1985), 135 Ill. App. 3d 520, 481 N.E.2d 946.

We agree with the bank. The Turovers were given an opportunity to respond to the bank's motion for a judgment on the pleadings but failed to do so despite the trial judge's order specifically granting the Turovers three weeks to respond.

In summary, we conclude that the Turovers obtained an equitable lien on the Glencoe property at the time they contracted with Lofstrom which was prior in time to the bank's involvement with the property. We find that Lofstrom's bankruptcy proceeding did not prevent the Turovers from litigating the priority of their lien over the bank's lien. Finally, we hold that the Turovers waived their right to challenge the order of the lien priorities on the Glencoe property

when they failed to claim such priority before the entry of the judgment of foreclosure.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

EGAN, P.J., and McNAMARA, J., concur.