**In the Matter of LEFKAS GENERAL PARTNERS, Nos. 1017, 1018, & 1020, Debtors.**

**Appeal of O'BRIEN & ASSOC., INC.**

**No. 96–2396.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 11, 1996.

Decided May 1, 1997.

David G. Harding (argued), Chicago, IL, for Appellant.

David K. Welch, Steven D. Schneiderman, Glenn R. Heyman, Dannen, Crane, Heyman & Simon, Chicago, IL, for appellee Glenn R. Heyman.

John Collen (argued), Mark W. Page, Sonnenschein, Nath & Rosenthal, Chicago, IL, for appellee Sius of Illinois Corp.

Norman B. Newman, Much, Shelist, Freed, Denenberg & Ament, Chicago, IL, for debtor Lefkas General Partners, Nos. 1017, 1018 and 1020.

Before BAUER, WOOD, Jr. and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

This appeal stems from an order of the bankruptcy court granting summary judgment in favor of SIUS of Illinois Corporation and Glenn R. Heyman, the Examiner with Expanded Powers, and denying summary judgment for O'Brien and Associates, Inc. O'Brien had sought leave to file proof of claim against the bankruptcy Debtors and to modify the order approving Debtors' Chapter 11 reorganization plan, in the hope that O'Brien could collect payment on its judgment against First National Real Estate & Development Company, Inc. ("FNR"). The district court affirmed the bankruptcy court's decision. We affirm.

## I. Background

### A. The Village and FNR Enter into the Crestwood Redevelopment Agreement.

On December 15, 1988, the Village of Crestwood, Illinois entered into the Crestwood Redevelopment Agreement ("the Agreement") with FNR for the development of 168 acres collectively known as River-Crest. Under the Agreement, the Village was required to issue bonds in order to raise money to buy or lease the ten parcels of land which comprised RiverCrest. The Village had to purchase seven of these parcels, designated "Airport Property," and lease the remaining three.

The Agreement named FNR as the developer of the project. In that capacity, FNR was responsible for securing commitments from nominees for the development of the parcels. FNR could choose itself as a nominee. Once FNR delivered a commitment for any particular parcel to the Village, the Village had to determine whether the nominee's commitment satisfied the Village's established criteria before the Village was obligated to convey its ownership or leasehold interest to FNR or FNR's nominee. The Agreement contemplated that FNR would then enter into development agreements with land trusts, whose beneficial owners would be the nominees chosen by FNR. These land trusts were required to join in and agree to be bound by the Agreement.

The Village also imposed deadlines on FNR for delivery of all commitments. These deadlines varied depending on whether the commitment was for a Phase I or a Phase II parcel. Phase I consisted of the four parcels of Airport Property. Phase II consisted of the remaining six parcels of RiverCrest. FNR had to deliver the commitments for the Phase I parcels by July 1, 1989. If FNR did not deliver the commitments by this date, the Village was required to sell all four parcels and distribute the proceeds in accordance with a local bond ordinance. FNR had to deliver commitments for the Phase II parcels by July 1, 1992. The Phase II parcels are not in issue in this case.

### B. Debtors Are Created.

On July 15, 1989, three single-purpose Illinois general partnerships, known as Lefkas General Partners Nos. 1017, 1018, and 1020, were formed to construct and manage the RiverCrest Shopping Center located within the redevelopment's project area. These three general partnerships are the debtors (hereinafter "Debtors") in this case. Debtors own 100% of the beneficial interest in three Illinois land trusts which were formed on that same day.

### C. The Village Conveys the Phase I Parcels—The Conveyance in Controversy.

At some point, the Village conveyed all of the Phase I parcels to FNR's nominee, land trust number 106489–05 at American National Bank & Trust Company of Chicago. On October 24, 1989 and November 8, 1989, land trust number 106489–05 conveyed the Phase I parcels to Debtors' respective land trusts. Debtors soon found themselves in need of a construction loan. To assist in obtaining the loan from the Taiyo Kobe Bank Ltd. ("Taiyo"), the Village, joined by FNR, wrote a letter to Taiyo stating that the Village had no right, title, or interest in the Phase I parcels. The Village and FNR further notified Taiyo that all of the conditions precedent in the Agreement had been met or waived in the conveyance of the Phase I parcels to Debtors' land trusts. Specifically, they told Taiyo that the July 1, 1989 deadline for delivering Phase I commitments had been extended by Village ordinance. The Village and FNR also assured Taiyo that the Village had waived the Agreement's requirement that Debtors' land trusts join in the execution of the Agreement. On November 21, 1989, Taiyo made a construction loan to Debtor's land trusts and took a mortgage on the Phase I parcels. Debtors proceeded to develop the property, which eventually became the River-Crest Shopping Center.

### D. O'Brien's Claim Against FNR Arises.

In 1989, O'Brien & Associates, an engineering firm, periodically performed services for FNR at various sites throughout Illinois and Michigan. FNR failed to pay for these services, and O'Brien sued FNR. On Septem-

ber 30, 1991, O'Brien procured a judgment against FNR in the Circuit Court of Cook County, Illinois, in the amount of $63,193.19, plus costs. That same day, O'Brien recorded the judgment with the Cook County Recorder of Deeds, thereby obtaining a judicial lien against all real property owned by FNR in Cook County.

### E. Debtors File for Bankruptcy and Develop a Liquidation Plan.

On October 4, 1991, Debtors filed petitions under Chapter 11 of the United States Bankruptcy Code. The three partnerships' cases were substantively consolidated. In their schedules of assets, Debtors listed their ownership interests in the Phase I parcels of RiverCrest as their most valuable assets. In their schedule of creditors, Debtors listed FNR as having an unsecured claim of $200,-000 against each Debtor for administrative fees incurred in connection with RiverCrest. Debtors did not include O'Brien in their schedule of creditors. The bankruptcy court set July 13, 1992 as the deadline for filing pre-petition creditors' claims and December 30, 1992 as the deadline for filing mechanics' lien claims. Debtors sent no notice of either filing date to O'Brien. O'Brien filed no proofs of claim against Debtors before either deadline passed.[1]

On May 11, 1992, pursuant to an order of the bankruptcy court, the United States Trustee appointed Glenn Heyman as Examiner With Expanded Powers for all three Debtors. On May 9, 1993, Debtors and the Sakura Bank Ltd., Taiyo's successor in interest, proposed a joint plan for Debtors' liquidation. Under the plan, Debtors would transfer their remaining assets and businesses free and clear of liens to SIUS of Illinois Corporation, Sakura Bank's assignee. As a condition precedent to confirmation of Debtors' joint liquidation plan, FNR was required to sign an "Acknowledgment Regarding Rights Under Crestwood Redevelopment Agreement," which stated that FNR had no

further rights in the property once Debtors had acquired the property from the Village.[2] Sakura Bank then assigned its claims against Debtors to SIUS and transferred RiverCrest to SIUS free and clear of liens in June and July of 1993.

### F. O'Brien Attempts to Satisfy Its Judgment Against FNR through the RiverCrest Shopping Center.

On September 3, 1993, O'Brien filed a motion for leave to file its proof of claim and to modify the order confirming Debtors' Chapter 11 reorganization plan so that the order would provide for payment of the balance of O'Brien's judgment against FNR. O'Brien believed that it was entitled to this leave of court because of its prior judicial lien against any real property interest of FNR in Cook County. In cross motions for summary judgment, the Examiner and SIUS contended that O'Brien's claim was against FNR, not Debtors. They further argued that O'Brien's claim was untimely. O'Brien countered that under the doctrine of equitable conversion, the Agreement gave FNR an equitable ownership interest in the Phase I parcels. O'Brien claimed that even though it occurred nearly two years before O'Brien's judicial lien had attached to FNR's real estate interests, the Village's conveyance of the Phase I parcels to Debtors' land trusts was ineffective to sever FNR's equitable interest in the land because FNR and the Village had not satisfied some of the Agreement's conditions precedent. The bankruptcy court granted the Examiner and SIUS's motion for summary judgment. The district court affirmed. O'Brien now appeals. We affirm, but on grounds different from those stated by the district court.

## II. Analysis

■ In a second appeal from a bankruptcy court decision, we utilize the same standard of review as that used by the district court

---

1. O'Brien claimed that it did not learn of Debtors' bankruptcy case until August 5, 1993, when its representative performed a routine check of the computer records of the Cook County Recorder of Deeds.

2. O'Brien alleges that this is the act that finally severed FNR's interest, but that it was insufficient to sever O'Brien's judicial lien on the land, which attached to FNR's alleged interest in the property before the Acknowledgment was issued.

below: we uphold a bankruptcy court's findings of fact unless clearly erroneous and we review a bankruptcy court's legal conclusions *de novo.* *In re Marrs–Winn Co., Inc.,* 103 F.3d 584, 589 (7th Cir.1996). As it is a conclusion of law, we review a district court's grant of summary judgment *de novo. McGinn v. Burlington N.R.R. Co.,* 102 F.3d 295, 298 (7th Cir.1996) (citations omitted). We will uphold an entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* (citations omitted).

O'Brien characterizes the Agreement as a contract of sale between the Village and FNR. He stresses that the parties did not meet the Agreement's requirements because FNR never gave the Village formal written instructions to convey the Phase I parcels and Debtors did not join in the Agreement as transferees of the property. O'Brien surmises that as a result, the Village's conveyance of the Phase I parcels to Debtors' land trusts did not terminate FNR's interest in the redevelopment property, thus rendering the property subject to O'Brien's post-transfer judicial lien. O'Brien contends that when it recorded its judgment against FNR, its lien attached to FNR's equitable interest in the property, even though the Village already had conveyed the Phase I parcels to Debtors' land trusts. Thus, O'Brien argues that it, as the holder of a secured claim, is entitled to be paid in full from the proceeds of the sale of the redevelopment property to SIUS, and that any claim Debtors or their successors might have to the redevelopment property is subject to FNR's equitable interest in the property, and, therefore, to O'Brien's judicial lien against FNR. The Examiner and the Village contend that the Agreement was not a contract of sale between the Village and FNR, that the Village's obligation to convey the property at FNR's direction was extinguished upon its transfer of the Phase I parcels to Debtors, and that O'Brien's claim rests against FNR, not the Debtors.

This case comes down to whether the Agreement constituted a contract of sale. As both lower courts discussed, O'Brien's judgment lien against FNR could have attached to the property conveyed to Debtors only if (1) the Agreement between FNR and the Village was a contract of sale, thereby rendering FNR the equitable owner of the property under the doctrine of equitable conversion, and (2) the Village's conveyance of the property to Debtors, which occurred before O'Brien obtained its judicial lien, was ineffective to divest FNR of equitable ownership. If the Agreement does not constitute a contract of sale, then O'Brien's remaining claims necessarily fall by the wayside.

A contract of sale is an agreement "by which one of the contracting parties, called the 'seller,' enters into an obligation to the other to cause him to have freely, by a title of proprietor, a thing, for the price of a certain sum of money, which the other contracting party, called the 'buyer,' on his part obliges himself to pay." BLACK'S LAW DICTIONARY 326 (6th ed. 1990); *see also Topzant v. Koshe,* 242 Wis. 585, 589–90, 9 N.W.2d 136, 138 (1943). That is, a contract of sale is simply an "[a]greement under which seller agrees to convey title to property upon payment by buyer under terms of contract." BLACK'S LAW DICTIONARY 326. In this case, the language of the Agreement indicated that the Village would transfer the RiverCrest parcels to land trusts designated by FNR. FNR admittedly had rather wide latitude in choosing a nominee who would then set up land trusts to buy or lease the redevelopment property. But FNR was a mere go-between charged with selecting and subsequently entering into agreements with the parcels' ultimate owners. The bankruptcy court said it best when it noted that O'Brien makes a "quantum leap" in arguing that because FNR *could* direct the Village to transfer redevelopment property to FNR itself, FNR retained the right to purchase the property. The fact remains that FNR directed the Village to transfer the property to Debtors' land trusts, not to FNR itself.

FNR could have directed that the Village convey parcels of the property to FNR itself. In that case, FNR still would not have been obligated to purchase any parcel because the ultimate owner of the beneficial interest in

the land trust was not obligated to buy the property. According to § 3.07 of the Agreement:

> The Developer [FNR] will enter into a development agreement with a land trust, or various land trusts, which will *own or lease* various portions of the Redevelopment Project Area. The Village agrees that any conveyance of the property hereunder shall be *at the direction of the Developer* and the Developer may direct the Village to convey *any fee interest or leasehold* to any of said trusts .... (emphasis added).

O'Brien states that "[t]he district court correctly found no factual support for the [bankruptcy court's and the Examiner's] proposition that the land might have been, at the Village's option, leased or sold to FNR or its nominee. The land which was to be sold under the contract [the Phase I parcels, which consisted of the four parcels of Airport Property] was definitely separate from the land which could have been leased." O'Brien suggests that § 3.03 applies exclusively to the Phase I parcels and § 3.07 applies exclusively to the Phase II parcels. However, this is a distinction without a difference for purposes of determining whether the Agreement amounts to a contract of sale because § 3.03 states:

> The Village covenants and agrees to convey the Airport Property *to or at the direction of* the Developer as each parcel is needed for the Redevelopment Project.... After the Village has received the commitments with respect to any one or more of the aforesaid Parcels, the Village shall promptly convey the respective Parcel or Parcels to Developer *or its nominee* ("the Grantee") for a purchase price of $1.00. (emphasis added).

Again, FNR could have directed the Village to convey portions of RiverCrest to FNR itself. If FNR then purchased these parcels, a contract of sale would result. But this one possible scenario does not render the Agreement a contract of sale.

■ We recall that under Illinois law, our search for the parties' intent begins with the contract itself. *Atlantic Mut. Ins. Co. v. Metron Eng'g & Constr. Co.*, 83 F.3d 897, 898 (7th Cir.1996) (citation omitted). "If the plain language of the contract resolves the dispute, our analysis necessarily ends." *Id.* The plain language of sec.sec. 3.03 and 3.07 ends our analysis. These sections, together with the facts of this case, show that the Village was not obligated to and did not enter into any agreement whereby FNR purchased and obtained title to any RiverCrest parcels. We conclude that the Agreement was not a contract of sale from the Village to FNR. FNR did not acquire, or for that matter retain, any real or equitable interest in the redevelopment property after the property was transferred to Debtors' land trusts.

■ Under the doctrine of equitable conversion, land is treated as personalty and personalty as land under certain circumstances. *See Ruva v. Mente*, 143 Ill.2d 257, 264, 157 Ill.Dec. 424, 428, 572 N.E.2d 888, 892 (1991). Illinois law holds:

> [W]hen the owner of land enters into a valid and enforceable contract for its sale[,] he continues to hold the legal title, but in trust for the buyer; and the buyer becomes the equitable owner and holds the purchase money in trust for the seller. The conversion takes place at the time of entering into contract.

*Shay v. Penrose*, 25 Ill.2d 447, 449, 185 N.E.2d 218, 219–20 (1962). The doctrine of equitable conversion stems from the basic equitable tenet that equity regards as done that which ought to be done. *Id.* 185 N.E.2d at 220. Equitable conversion takes place only when a valid and enforceable contract exists and when the parties have met any or all contingencies or conditions precedent which might prevent the contract from being enforceable or effective. *See Hinsdale Fed. Sav. & Loan Ass'n v. Gary–Wheaton Bank*, 100 Ill.App.3d 746, 748, 56 Ill.Dec. 558, 560, 427 N.E.2d 963, 965 (1981).

■ O'Brien argues that equitable conversion cannot be avoided in this case because the Agreement contained no express statement of the parties' intent that the doctrine not apply. *See Eade v. Brownlee*, 29 Ill.2d 214, 217–18, 193 N.E.2d 786, 788–89 (1963). We need not reach the issue of whether the parties intended that equitable conversion apply to the Agreement; we have already

found, as a preliminary matter, that the Agreement was not a contract of sale between the Village, as seller, and FNR, as buyer. This is not the proper context to discuss equitable conversion. FNR did not retain any real or equitable interest in the redevelopment property after the property was transferred to Debtors' land trusts. Therefore, we also need not decide whether the Village's conveyance of the property to Debtors was ineffective to divest FNR of any equitable ownership in the property because the Agreement's various conditions precedent were not fulfilled. FNR cannot have been divested of that which it never possessed. O'Brien's judgment against FNR cannot be satisfied through Debtors' stakes in RiverCrest.

### Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.