DIANA WILKONSON, Indiv. and as Guardian and Next Friend of Luka Yovetich, *et al.*, *et al.*, Plaintiffs-Appellants, v. KAREN WAGENKNETCH YOVETICH, Defendant-Appellee.

First District (5th Division)   No. 1—91—3370

Opinion filed June 30, 1993.

Nisen & Elliott, of Chicago (Michael H. Moirano and Daniel P. Dawson, of counsel), for appellants.

Sidley & Austin, of Chicago (Stephen C. Carlson, of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:
The plaintiffs, Diana Wilkonson (Mrs. Wilkonson), individually and as guardian and next of friend of Luka Yovetich and Wallace Yovetich (Luka and Wallace), and Donald Yovetich, as administrator of the estate of Gene Yovetich, appeal from the circuit court's order dismissing their claims against the defendant, Karen Wagenknetch Yovetich (Mrs. Yovetich), for failure to state a cause of action under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—615). On August 1, 1987, Gene Yovetich (the decedent) died testate, and on March 12, 1988, the parties to this appeal executed a family settlement agreement for the purpose of distributing the decedent's estate. On May 9, 1989, the plaintiffs brought suit against Mrs. Yovetich, seeking to rescind the family settlement agreement of March 12, 1988, and obtain specific performance of an antenuptial agreement entered into by Mrs. Yovetich and the decedent at the time of their marriage. The circuit court dismissed the claims on January 12, 1990, but granted the plaintiffs leave to file an amended complaint. Plaintiffs' amended complaint was dismissed on December 13, 1990. On September 26, 1991, the circuit court entered an order finding that there was no just reason for delaying the enforcement or appeal of the court's prior dismissal of counts I through V of the plaintiffs complaint.
We affirm in part and reverse in part.

BACKGROUND
This appeal concerns the dismissal of claims pursuant to section 2—615 of the Code of Civil Procedure. Therefore, we must accept all of the plaintiffs' well-pleaded facts as true. (*Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 19.) However, we need not accept unsupported conclusions of fact or law which appear in the complaint. See *Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 505.

On August 1, 1987, Gene Yovetich died testate and, pursuant to his will, the decedent left his entire estate to his minor children, Luka and Wallace. Luka and Wallace are the natural born children of the decedent and his former wife, Mrs. Wilkonson, who is the custodial parent and court-appointed guardian of Luka and Wallace.

The defendant, Mrs. Yovetich, was married to the decedent at the time of his death. She has a minor child, Theodore Wagenknetch (Theodore), who was born during a prior marriage. Although Theodore lived with the decedent and Mrs. Yovetich at the time of the decedent's death, Theodore was not adopted by the decedent and is not otherwise related to him.

Prior to their marriage, the decedent and Mrs. Yovetich entered into an antenuptial agreement. Pursuant to the antenuptial agreement, each party disclaimed any interest in the other's premarital property, including the parties' pension and profit sharing plans.

Several days after the decedent's funeral, Mrs. Yovetich's attorney informed Mrs. Wilkonson that Mrs. Yovetich intended to contest the validity of the antenuptial agreement and assert claims to recover a portion of the decedent's estate. Both Mrs. Yovetich and her attorney suggested to Mrs. Wilkonson that litigation could be avoided and family harmony preserved if she would agree on behalf of Luka and Wallace, the sole beneficiaries of the estate, to allow defendant to share in the estate. Mrs. Wilkonson asserts that her decision to enter into a settlement was motivated by her desire to preserve family harmony.

On March 12, 1988, a written family settlement agreement was entered into by Mrs. Wilkonson, as the court-appointed guardian of Luka and Wallace Yovetich, by Donald Yovetich, as the independent administrator of the estate of the decedent, and by Mrs. Yovetich. Pursuant to the family settlement agreement, Mrs. Wilkonson promised, on behalf of her minor children, to disclaim and distribute to Mrs. Yovetich $200,000 in cash plus additional assets of the decedent's estate. In exchange, Mrs. Yovetich agreed to waive any interests she might claim in any probate and nonprobate property belonging to the decedent, including his pension and profit sharing benefits. Mrs. Yovetich also agreed that she would decline to act as administrator of the estate, and she would decline to exercise her statutory preference to name the administrator. The agreement provided that it "contain[ed] the complete understanding among the parties and [could not] be modified except by written agreement of all the parties." Although the agreement was entered into on March 12, 1988, the agreement stated that it was not to be binding and was to be of no force and

effect until all property transfers required thereunder had occurred and certain other terms and conditions were met.

At the time Mrs. Wilkonson entered into the family settlement agreement, Luka and Wallace were receiving between $1,400 and $1,800 per month in social security benefits. However, prior to completing the transfer of assets contemplated by the family settlement agreement, Mrs. Wilkonson received a letter from the Social Security Administration advising her that Luka's and Wallace's benefits might be reduced because a competing claim for benefits had been filed. Apparently, shortly after the family settlement agreement was executed, but prior to the completion of all the terms of the agreement, Mrs. Yovetich applied for social security death benefits for her minor son, Theodore, without plaintiff's knowledge.

As soon as Mrs. Wilkonson became aware of the claims for social security benefits filed by the defendant, she advised the defendant that unless full benefits were preserved for her children, Luka and Wallace, she would not proceed with the agreement on the terms the parties had discussed. The language of the family settlement agreement does not address social security benefits and does not prohibit Mrs. Yovetich from applying for benefits on behalf of her minor son. Nonetheless, in an effort to induce the plaintiffs to proceed with the property transfers required under the agreement, Mrs. Yovetich promised that once all the property transfers had been made, she would withdraw her son's claim for social security benefits.

Mrs. Yovetich's promise to withdraw her claim for social security benefits was acknowledged in writing by her attorney prior to the completion of all the terms of the family settlement agreement. On or about April 26, 1988, plaintiffs' counsel received from Mrs. Yovetich's counsel a draft letter dated April 26, 1988, which was to be executed by Mrs. Yovetich. The letter confirmed that Mrs. Yovetich would rescind her application for her son's social security benefits provided that plaintiffs agreed to proceed under the family settlement agreement and transfer the $200,000 and other property to her.

On April 27, 1988, counsel for Mrs. Yovetich orally advised counsel for plaintiffs that Mrs. Yovetich had, in fact signed the April 26, 1988, letter and that the signed copy would be delivered to plaintiff as soon as the property transfers were completed. These oral representations were later confirmed by a letter from Mrs. Yovetich's counsel dated May 2, 1988.

In reliance upon the representations made by defendant and her counsel, plaintiffs began transferring the $200,000 in cash and other property to the defendant on April 27, 1988. By May 10, 1988, all of

the required property transfers had been completed, and Mrs. Yovetich had received all that she was entitled to receive under the family settlement agreement.

Pursuant to the family settlement agreement, Mrs. Yovetich agreed to waive all claims to the decedent's probate and nonprobate assets which were not specifically transferred to her under the agreement. The money contained in the decedent's pension and profit sharing plan constituted one of the assets Mrs. Yovetich agreed to waive any claim to. However, Mrs. Yovetich refused to deliver a spousal benefit waiver form which was necessary to accomplish the transfer of the decedent's pension and profit sharing benefits to Luka and Wallace, even though her attorney had prepared a form for her to sign. Mrs. Yovetich also initially refused to take action to withdraw her claims for her son's social security benefits.

In December of 1988, after numerous additional communications between the parties, Mrs. Yovetich did take action to withdraw the claim for social security benefits on behalf of her son. However, the Social Security Administration would not allow the claim to be withdrawn. As a result, Mrs. Yovetich's son continues to receive social security benefits on account of the decedent's death, and concomitantly, Luka's and Wallace's benefits have been substantially reduced.

At the present time, Mrs. Yovetich continues to refuse to execute the spousal waiver form necessary to transfer the decedent's pension and profit sharing benefits to Luka and Wallace. In the litigation below, Mrs. Yovetich took the position that she has no duty to execute the spousal waiver form.

On May 9, 1989, the plaintiffs, Mrs. Wilkonson, individually and as guardian and next friend of Luka and Wallace, and Donald Yovetich, as administrator of the decedent's estate, brought suit against the defendant, Karen Wagenknetch Yovetich. Plaintiffs sought to rescind the family settlement agreement and obtain specific performance of the antenuptial agreement between defendant and the decedent. On January 12, 1990, the circuit court granted defendant's section 2—615 motion to strike and dismiss the complaint, and granted plaintiffs leave to file an amended complaint.

On April 5, 1990, plaintiffs filed their amended complaint. Count I of the amended complaint sought rescission of the family settlement agreement based upon failure of consideration; count II sought rescission based upon a mistake of fact; count III sought damages for breach of contract; count IV was an action by plaintiff Diana Wilkonson, individually, for intentional infliction of emotional distress; and count V sought specific performance of the antenuptial agreement.

The defendant moved to strike and dismiss the amended complaint with prejudice, alleging that all five of the plaintiffs' claims were barred and insufficient as a matter of law. On December 13, 1990, the trial court dismissed the amended complaint, "with prejudice," but granted plaintiff leave to file a second amended complaint seeking specific performance of the family settlement agreement.

On January 16, 1991, plaintiffs filed a second amended complaint. In the second amended complaint plaintiffs repleaded counts I through V of the amended complaint in order to preserve these issues for appeal. The complaint also contained a sixth count seeking an order of specific performance requiring defendant to execute and deliver a waiver of any claim or interest in the decedent's pension and profit sharing benefits.

On May 20, 1991, the trial court granted the defendant's motion to strike plaintiffs' second amended complaint. Plaintiffs were given leave to file a third amended complaint seeking specific performance and/or declaratory relief.

Following the hearing on May 20, plaintiffs filed a third amended complaint. Defendant filed a motion to strike immaterial matter from the third amended complaint. On September 26, 1991, the trial court made a finding pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) that there was no just reason for delaying the enforcement or appeal of the court's prior dismissal of counts I through V and granted plaintiffs leave to file a fourth amended complaint to seek specific performance of the family settlement agreement. Plaintiffs now appeal from the dismissal of counts I through V of their amended complaint.

OPINION

Counts I through V of plaintiffs' complaint were dismissed for failure to state a cause of action under section 2—615 of the Code of Civil Procedure. (Ill. Rev. Stat. 1991, ch. 110, par. 2—615.) In reviewing a section 2—615 motion, the court must determine whether the allegations in plaintiffs' complaint, when interpreted in the light most favorable to the plaintiffs, are sufficient to set forth a cause of action upon which relief may be granted. See *Burdinie*, 139 Ill. 2d at 505.

■ In count I, plaintiffs assert that they are entitled to a rescission of the family settlement agreement because of a failure of consideration. In order to state a cause of action for rescission, the plaintiffs must allege facts which establish: (1) that there has been substantial nonperformance or substantial breach by another party (see *Felde v. Chrysler Credit Corp.* (1991), 219 Ill. App. 3d 530, 539); and (2) that

the parties can be placed in the status quo *ante* (see *Luciani v. Bestor* (1982), 106 Ill. App. 3d 878, 882).

■ Plaintiffs' complaint does not allege sufficient facts to meet the second prerequisite for a claim of rescission: the complaint fails to establish that the parties can be returned to status quo *ante*. The defendant gave up her right to administer the estate, and the estate has been administered by Donald Yovetich for the past four years. The defendant also waived her rights to a collect a widow's award and to renounce the decedent's will and claim a spousal share. The defendant cannot regain these legal rights she has given up. Moreover, the administration of the estate cannot be undone. Despite plaintiffs' assertions to the contrary, the parties simply cannot be placed in the same position that they were in prior to the agreement.

Ordinarily, a court sitting in equity will not order the rescission of a contract where the parties cannot be placed in the status quo *ante*. (*Luciani*, 106 Ill. App. 3d at 882.) Furthermore, the failure of the plaintiffs to establish to the satisfaction of the court that the equitable remedy sought is appropriate under the circumstances may operate to defeat their claim in equity. (*Luciani*, 106 Ill. App. 3d at 882.) In this case, the allegations of plaintiffs' complaint failed to demonstrate that the parties can be restored to the status quo *ante*. Accordingly, the trial court did not err in dismissing count I of plaintiffs' complaint, which seeks rescission due to a failure of consideration.

■ In count II, plaintiffs assert that they are entitled to a rescission of the family settlement agreement due to the mistaken belief of both parties that the defendant's claim for social security could be withdrawn. To state a cause of action for rescission based upon mistake, the plaintiff must allege sufficient facts to establish: (1) the mistake relates to a material feature of the contract; (2) the mistake occurred despite the exercise of reasonable care; and (3) the other party can be placed in status quo *ante*. *John J. Calnan Co. v. Talsma Builders, Inc.* (1977), 67 Ill. 2d 213, 218.

As we discussed above, the parties cannot be placed in status quo *ante*. Therefore, the complaint fails to allege facts sufficient to state a cause of action for rescission based upon mistake, and the trial court did not err in dismissing count II.

■ Count III of the plaintiffs' complaint is an alternative claim for damages resulting from the defendant's alleged breach of the family settlement agreement. Plaintiffs assert that the family settlement agreement was breached by the defendant in two material respects: (1) the defendant failed to withdraw her minor son's claim for social security benefits; and (2) the defendant failed to execute the spousal

waiver necessary to allow Luka and Wallace to receive the decedent's pension and profit sharing benefits. Thus, plaintiffs seek damages equal to the sum of the total reduction in Luka's and Wallace's social security benefits, as well as the full value of the decedent's pension and profit sharing plan.

The language of the family settlement agreement does not address the issue of social security benefits. Moreover, plaintiffs do not contend that the terms of the family settlement agreement, as written, in any way preclude the defendant from applying for social security benefits on behalf of her minor son. Instead, plaintiffs assert that the family settlement agreement was modified to include defendant's subsequent promise to act to withdraw the social security claims.

The family settlement agreement plainly states that it "contains the complete understanding among the parties and cannot be modified except by written agreement of all parties." Plaintiffs have not produced any document which is signed by all of the parties and purports to be a modification of the family settlement agreement. Instead, plaintiffs point to an unsigned draft letter from the defendant which states that the defendant will act to withdraw the social security claim after the plaintiffs fulfill their obligations under the family settlement agreement. Plaintiffs also rely on a letter from the defendant's attorney which states that he is holding a signed copy of the draft letter plaintiffs received and he will forward the signed letter after plaintiffs comply with the family settlement agreement. Neither the draft letter nor the letter from defendant's counsel conforms to the conditions set forth in the family settlement agreement as necessary to effect a modification; neither document is a written agreement of all the parties.

Plaintiffs also assert that because discovery was stayed, they were barred from obtaining the signed copy of the defendant's letter promising to act to withdraw the social security claim. Plaintiffs assert that this document would establish that the family settlement agreement was modified. We disagree. Assuming the document exists, it is not a written agreement by all of the parties.

We regard plaintiffs' assertion that the family settlement agreement was modified as questionable at best. However, we need not decide whether the defendant's promise to act to withdraw her son's application for social security benefits constituted a valid modification, because the defendant fully performed any obligations she had with respect to the social security claims.

The draft letter from Mrs. Yovetich states that she agrees "*to act to rescind* [the] application for [her] son's social security benefits."

(Emphasis added.) The defendant did not agree to succeed in obtaining a withdrawal of the claim. Nor did the defendant agree to pay the plaintiffs the equivalent of the reduction in Luka's and Wallace's benefits if the Social Security Administration refused to allow the claim to be withdrawn. The defendant simply promised "to act" to withdraw the claim, and plaintiffs' complaint admits that the defendant did in fact act to withdraw the social security claim. Plaintiffs cannot state a claim for breach of contract based upon defendant's failure to withdraw her son's claim for social security benefits.

Plaintiffs' contention that the defendant breached her agreement by failing to act *diligently* is also unavailing. Nothing in the Social Security Act proscribes a time limit for submitting a withdrawal claim. (See 20 C.F.R. §404.640 (1992).) The Social Security Act provides that the Social Security Administration may allow claims to be withdrawn after a determination of benefits has been made or it may not. (See 20 C.F.R. §404.640 (1992).) Plaintiffs have failed to allege that the outcome of defendant's attempt to withdraw her claims would have been different if she had acted sooner. Furthermore, defendant did not agree to act to withdraw her claim within any particular time period. Plaintiffs cannot state a claim for breach of contract based upon the defendant's failure to diligently withdraw her son's claim for social security benefits.

Within the same count, plaintiffs also contend that the family settlement agreement was breached because the defendant failed to execute the spousal waiver form necessary to release the pension and profit sharing funds to Luka and Wallace. Pursuant to the family settlement agreement, the defendant agreed to waive all claims to probate and nonprobate assets which were not specifically transferred to her by the agreement. Plaintiffs allege that the defendant violated this obligation by failing to execute a spousal waiver of the pension and profit sharing benefits. Although the literal language of the agreement does not require the defendant to execute such a waiver, we are inclined to agree with the trial court's suggestion that the defendant may have had an implicit duty to execute the waiver form.

Although the trial court appeared to recognize that Mrs. Yovetich had an implicit duty under the family settlement agreement to sign the spousal waiver, the trial court dismissed the breach of contract claim and suggested that plaintiffs amend their complaint to seek specific performance and/or declaratory judgment. The trial court erred in this respect.

We acknowledge that plaintiffs' complaint is not a model of clarity. However, pleadings must be liberally construed with a view to do-

ing substantial justice between the parties. (Ill. Rev. Stat. 1991, ch. 110, par. 2—603(c).) A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts entitle plaintiffs to relief. *Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360-61.

A sufficient claim based upon breach of contract must allege the existence of a contract between plaintiffs and defendant, performance by plaintiff of the obligations imposed upon him by the contract, breach of the contract by defendant, and the existence of damages as a result of the breach. (*Payne v. Mill Race Inn* (1987), 152 Ill. App. 3d 269, 273.) In this case, plaintiffs have alleged that the parties entered into a contract, the family settlement agreement, and attached the contract to their complaint. The complaint contains sufficient allegations to establish that plaintiffs performed their obligations under the contract. Plaintiffs alleged that pursuant to the family settlement agreement Mrs. Yovetich promised to disclaim all interest in the decedent's pension and profit sharing benefits, but refused to perform this obligation. Finally, plaintiffs alleged that they suffered damages because they were unable to obtain the pension benefits without the defendant's signed waiver form. These allegations are sufficient to state a cause of action for breach of contract.

It is true that plaintiffs have intermingled allegations of two distinct breaches of the family settlement agreement in one count of their complaint. However, this deficiency was a formal defect rather than one of substance. (*Bernesak v. Catholic Bishop* (1980), 87 Ill. App. 3d 681, 687.) Although this defect may have justified striking the count, it cannot justify dismissal of the count. In count III, plaintiffs sought relief for breach of contract based upon the defendant's failure to withdraw the claim for social security benefits as well as the failure to execute a spousal waiver for the pension and profit sharing benefits. Although plaintiffs have stated a sufficient cause of action for the latter breach, they have not and cannot state a claim for the former breach. The proper course of action would have been to strike the inappropriate allegations and allow the count to stand or, in the alternative, to strike the complaint and allow the plaintiff to amend the complaint. In this case, the trial court did allow the plaintiff to file an amended complaint, but only for the purpose of alleging new counts for specific performance and/or declaratory judgment. The trial court refused to allow the plaintiffs to amend the breach of contract claim and, in doing so, improperly restricted the available remedies at the pleadings stage. We hold that the trial court erred in dismissing count III of plaintiffs' complaint with prejudice; plaintiffs

should have been given the opportunity to amend this count of their complaint.

■ In count IV, plaintiff, Diana Wilkonson, individually, asserts a claim for defendant's alleged intentional infliction of emotional distress. In order to state a claim for intentional infliction of emotional distress, the plaintiff must allege facts which demonstrate that: (1) the defendant's conduct was extreme and outrageous; (2) the emotional distress suffered by the plaintiff was severe; and (3) the defendant knew that severe emotional distress was certain or substantially certain to result from such conduct. See *Miller v. Equitable Life Assurance Society of the United States* (1989), 181 Ill. App. 3d 954, 956. Liability will not ensue unless the defendant's conduct has been " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.' " *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 90, quoting Restatement (Second) of Torts §46, Comment *d* (1965).

Plaintiffs' complaint does not raise a single allegation demonstrating that the defendant has engaged in conduct which goes beyond the bounds of decency. Assuming that all of the allegations in the plaintiffs' complaint are true, all that can be said is that the defendant asserted her legal rights in connection with a family dispute over the decedent's estate and she may have breached the family settlement agreement. Neither of these actions can be said to be extreme or outrageous. Accordingly, the trial court did not err in dismissing count IV of plaintiffs' amended complaint.

■ In count V, plaintiffs seek specific performance of the antenuptial agreement entered into by the defendant and the decedent. In their brief, plaintiffs state that they seek specific performance of the antenuptial agreement *if* the family settlement agreement is rescinded. As plaintiffs appear to recognize, they are barred from bringing a cause of action to enforce the antenuptial agreement so long as the family settlement remains in force. Pursuant to the family settlement agreement, plaintiffs released the defendant from all causes of action, both at law and in equity that plaintiffs had against the defendant concerning the disposition of the decedent's probate and nonprobate assets. We have already determined that plaintiffs cannot state a cause of action for rescission of the family settlement agreement. Therefore, plaintiffs are precluded from seeking to enforce the prior antenuptial agreement. The trial court properly dismissed count V of plaintiffs' complaint.

In summary, we hold that the trial court properly dismissed counts I, II, IV, and V of plaintiffs' complaint, but improperly dis-

missed count III. On remand, plaintiffs should be given the opportunity to amend their complaint to state a claim for breach of contract.

Affirmed in part; reversed in part and remanded.

GORDON, P.J., and McNULTY, J., concur.