# Illinois Official Reports

## Appellate Court

*Vandenberg v. Brunswick Corp.*, 2017 IL App (1st) 170181

| | |
|---|---|
| Appellate Court Caption | SCOT VANDENBERG and PATRICIA VANDENBERG, Plaintiffs-Appellees, v. BRUNSWICK CORPORATION; BRUNSWICK BOAT GROUP, a Division of Brunswick Corporation; and RQM, LLC, Defendants (Brunswick Corporation; Brunswick Boat Group, a Division of Brunswick Corporation, Defendants-Appellants). |
| District & No. | First District, First Division<br>Docket Nos. 1-17-0181, 1-17-0646 cons. |
| Filed | November 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2010-L-003188; the Hon. James N. O'Hara, the Hon. Daniel J. Lynch, and the Hon. Elizabeth M. Budzinski, Judges, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Winston & Strawn LLP (Dan K. Webb, Matthew R. Carter, and Alexandra J. Schaller, of counsel) and Nicolaides Fink Thorpe Michaelides Sullivan LLP (Paula M. Carstensen, Kimberly A. Hartman, and Mark J. Sobczak, of counsel), both of Chicago, for appellants.<br><br>Power Rogers & Smith, L.L.P. (Joseph A. Power, Jr., James I. Power, and Joseph W. Balesteri, of counsel), and Kralovec, Jambois & Schwartz (John B. Kralovec and Joseph Conboy, of counsel), both of Chicago, for appellees. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Simon concurred in the judgment and opinion.
Justice Mikva specially concurred, with opinion.

## OPINION

¶ 1    Defendants, Brunswick Corporation and Brunswick Boat Group (collectively, Brunswick), appeal the order of the circuit court granting plaintiffs Scot and Patricia Vandenberg's[1] motion to vacate the court's prior orders and to reinstate the parties' settlement agreement. On appeal, Brunswick contends (1) the trial court failed to give deference to the court's prior finding that plaintiffs' counsel fraudulently induced the settlement, (2) the trial court erred in reinstating the settlement where there was a mistake in a material term and Brunswick was deprived of its due process right to a fair trial, and (3) the trial court erred in vacating the judgment on the jury's verdict in favor of Brunswick. For the following reasons, we affirm.

¶ 2                                JURISDICTION

¶ 3    The trial court granted plaintiffs' motion to vacate its prior orders and to reinstate the settlement agreement on December 20, 2016. On January 18, 2017, Brunswick filed a motion to vacate the December 20, 2016, order, and on January 19, 2017, Brunswick filed a notice of appeal from the order. The trial court denied Brunswick's motion to vacate on February 14, 2017. On February 15, 2017, the trial court entered an amended order denying Brunswick's motion to vacate and entered final judgment in favor of plaintiffs for $25 million. Brunswick filed its notice of appeal on March 15, 2017. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 303 (eff. May 30, 2008) and 304(a) (eff. Mar. 8, 2016), governing appeals from final judgments entered below.

¶ 4                                BACKGROUND

¶ 5    While hosting a party on a yacht, Scot Vandenberg fell from the upper deck and broke his neck. The accident rendered him quadriplegic. The yacht was manufactured by Brunswick and owned and chartered by RQM. Plaintiffs filed a negligence and strict liability action against Brunswick and RQM, alleging failure to provide railings or equivalent protection around the periphery of the boat deck, failure to prevent Vandenberg from accessing areas without railings, and failure to warn about the lack of railings. Plaintiffs subsequently settled with RQM, and the case proceeded to trial against Brunswick before Judge Budzinski.

¶ 6                             I. Trial and Settlement

¶ 7    On June 9, 2015, the parties presented closing arguments, during which plaintiffs' counsel requested a verdict in favor of plaintiffs for $103 million. Prior to closing arguments, AIG Global Claims Officer Andrew Barberis instructed Charles Patitucci, a claims adjuster, to offer

---

[1]We note that the cover of appellant's brief refers to plaintiffs as "Vanderberg" but the record, the briefs and argument of appellee, and the argument within appellant's brief refers to them as "Vandenberg." We will therefore refer to plaintiffs as "Vandenberg."

plaintiffs $25 million in settlement of their claims against Brunswick. Brunswick was insured through AIG, and through the program, Brunswick was responsible for the first $2 million of liability, with AIG thereafter responsible for liability up to the policy limit of $41.5 million. Patitucci did not want to make the offer to plaintiffs, but Barberis instructed him to make the unconditional offer. While the jury deliberated, Patitucci extended the $25 million offer to plaintiffs' attorney, Mark McNabola.

¶ 8    McNabola informed plaintiffs of the offer to settle, and at 3:40 p.m., plaintiffs told McNabola they would accept the offer. McNabola had not informed Brunswick of plaintiffs' acceptance when he received a call at 3:52 p.m. from Tatianna Agee, Judge Budzinski's clerk. Agee told McNabola that the jury had sent out a note asking the following question: "CAN WE FIND FAULT WITH RQM, WITHOUT FINDING FAULT WITH BRUNSWICK?" Brooke Reynolds, a student extern for Judge Budzinski, was in the room when Agee made the call. Reynolds overheard Agee disclosing the contents of the note in a hushed voice, and Agee told her she liked to "give the plaintiffs a little more of an opportunity to settle or figure the question out before the defense." Agee said that McNabola told her the answer was "no" and to "hold-off, don't do anything yet, I'm going to try to settle this."

¶ 9    McNabola tried to reach Patitucci but was unsuccessful at first. McNabola spoke again to Agee around 4:01 p.m., telling her that he could not get a hold of the person he needed to speak to about the settlement. He asked for further instructions, and Agee told him that Judge Budzinski wanted the parties to return to court. McNabola called Brunswick's lead counsel, John Patton, and asked for Patitucci's cell phone number. He did not tell Patton about the jury note or that Agee had told him of the note's contents. McNabola reached Patitucci at 4:03 p.m., and after learning that Patitucci's authority to settle was limited to the $25 million offered, McNabola accepted the offer. Patitucci did not give any indication that he knew of the jury note or its contents. At 4:11 p.m., Patitucci called Patton and informed him of the settlement.

¶ 10    Patitucci told Patton to place the settlement on the record, and Patton asked his colleague, John Ouska, to go to court for that purpose. Patton also instructed Ouska to request that the jury be allowed to continue deliberating to verdict because Patitucci was curious what the jury would find. After speaking with Ouska, Patton received a call from Agee at 4:19 p.m., and she informed him that Judge Budzinski wanted the parties to come to court to discuss the jury note. Patton had not known about the jury note prior to Agee's call. Patton called Patitucci and told him that he would ask Ouska to "check into [the note] when he got [to court]." This was also the first time Patitucci had heard of the note, and although he did not want to revoke the settlement based only on the fact the jury sent out a note, he wanted to find out "[a]nything and everything about the note."

¶ 11    Patitucci returned to court along with Kelly Kaiser, associate general counsel for Brunswick, and Kimberly Kearney, Brunswick's appellate counsel. At approximately 4:40 p.m., Ouska, Kearney, and Kaiser entered Judge Budzinski's chambers, where plaintiffs' attorneys Ruth Degnan and Terrance Nofsinger were already present. Judge Budzinski informed them that the jury had sent out a note "at approximately 3:50 p.m." and she was surprised it took counsel so long to return to court after being notified. All counsel present viewed the jury note and its contents. On the bottom, the note bore a handwritten notation of "Rec'd 3:50 p.m." Kaiser called Patitucci at 4:45 p.m., and informed him of the contents of the note. Patitucci then called Patton. At 4:50 p.m., the settlement was entered on the record in the presence of counsel and the case dismissed.

¶ 12    Ouska requested that the jury be allowed to deliberate to verdict. Judge Budzinski agreed, over Degnan's objection, as long as the deliberations did not continue past 5 p.m. Judge Budzinski answered the jury question, instructing them to continue deliberations according to the instructions already given. The jury reached a verdict in favor of Brunswick at approximately 5 p.m. At this time, Patton arrived at court and waited to speak with Judge Budzinski. Patton informed Judge Budzinski that the settlement occurred without him having knowledge of the jury's note. Agee, who was present during this exchange, claimed she tried to call Patton earlier, but Patton responded that his phone did not indicate any calls from Agee before 4:19 p.m.

¶ 13    Judge Budzinski left the courtroom, and when Patton approached her chambers around 5:15 p.m., he heard shouting. He saw Agee, who "had tears in her eyes." She walked out of the judge's chambers, and Patton handed Judge Budzinski the order he wanted entered. The order reflected that the parties had settled and also acknowledged a judgment on the verdict for defendants. Judge Budzinski denied Patton's request to enter an order reflecting a jury verdict for the defense because the case had already been dismissed pursuant to the settlement. She informed Patton that he did not receive a call because "McNabola told [Agee] not to call you so he could settle the case." Patton requested an evidentiary hearing and for the preservation of phone records and court materials. On June 12, 2015, Brunswick filed a motion to vacate the settlement and for entry of judgment on the jury's verdict on the grounds of fraud and mistake.

¶ 14    On June 15, 2015, Judge Budzinski filed a memorandum of the court detailing the events of June 9, 2015. The memorandum stated that the court received a jury note at 3:50 p.m. and instructed Agee "to contact the lawyers and direct them to appear in chambers." Reynolds was also present at the time. Agee later informed the court that she spoke with McNabola and he told her the case had settled. McNabola told Agee that he wanted to speak to the court "since the case was settled [and] neither he nor the defendant was interested in the contents of the jury note." The court responded that they still needed to appear in chambers. Agee was instructed to contact Patton and inform him that he needed to appear in chambers to address the unpublished jury note. Patton spoke with the court and confirmed the settlement and "that both he and Mr. McNabola wanted the jury to continue their deliberations." Patton informed the court that Ouska would appear in chambers.

¶ 15    The court asked Agee if she had informed McNabola of the jury note's contents, and she responded "no." The court also asked Agee if she had contacted Patton at the same time she contacted McNabola, and Agee responded "yes." McNabola had also told Agee to "hold off, or something to that effect."

¶ 16    At 4:40 p.m., Degnan, Ouska, Kearney, and a corporate representative from Brunswick gathered in chambers, and the jury note was read. The court gave the jury a written response and, "[p]ursuant to the parties' request, the settlement was put on the record." The jury reached a verdict in favor of defendants 5 to 10 minutes later. The jury was released, and the court entered a dismissal order. Patton had arrived by this point and informed the court that he had not received a call about the jury note. "The Court asked Ms. Agee again in open court and later in chambers if she had called Mr. Patton advising him that there was a jury note and that he was required to come to chambers. Ms. Agee assured the Court that she did call Mr. Patton."

¶ 17    Patton requested that the court enter an order reflecting that the jury reached a verdict in favor of defendants, as well as the settlement, so he and the court would get "credit" for the verdict. The court denied Patton's request, and Patton reiterated that he never received a call

about the jury note. The following day, Reynolds advised the court that she overheard Agee speaking with McNabola on the phone and that Agee informed him of the contents of the jury note. McNabola also told Agee that the answer to the jury question should be "no."

¶ 18                    II. Brunswick's Motion to Vacate Settlement Agreement
                              and Enter Judgment on the Verdict

¶ 19    Judge Budzinski subsequently recused herself, and Judge Daniel J. Lynch was assigned to the case. The court then addressed Brunswick's motions to vacate the settlement and to enter judgment on the verdict filed on June 12, 2015. The court first held an evidentiary hearing on Brunswick's motion to vacate. At the hearing, McNabola, Degnan, Patitucci, Patton, Kearney, Agee, Reynolds, and plaintiffs testified. The court also received phone records as evidence.

¶ 20    The court issued an oral opinion on January 19, 2016, rescinding the settlement agreement. It stated that "[t]here is absolutely no dispute between the parties in this matter as to what Agee did or failed to do between 3:50 p.m. and 4:19 p.m. with the note and its contents." It found Patitucci and Patton to be credible witnesses regarding when and how they learned of the jury note, and it found Degnan's and McNabola's testimony regarding their belief that Brunswick had contemporaneous knowledge of the note and its contents not credible. The court also found Agee was "clearly not a credible witness" when she denied she saw the jury note or that she revealed its contents to McNabola at 3:52 p.m.

¶ 21    The court determined that Patitucci had the authority to reject a settlement and would have done so here "if he knew any one of the following: The existence of the note, the contents of the note, or that McNabola knew of both." It concluded that McNabola had a duty to disclose his knowledge of the note and its contents to Brunswick under court rules and rules of professional conduct. The court vacated the settlement agreement based on grounds of fraud in the inducement, unilateral and mutual mistake, due process, and public policy. It further found that the case might implicate criminal conduct and indicated to Brunswick's posttrial counsel, Dan Webb, that he should contact the State's Attorney's office, which he did. On March 9, 2016, plaintiffs sent a letter to Patitucci accepting the $25 million offer, and also filed a motion to enforce settlement in the case.

¶ 22    The court subsequently reconstituted the jury that reached a verdict for the defense on June 9, 2015, and confirmed that a unanimous verdict had been reached. On May 19, 2016, the court held a hearing on Brunswick's motion to enter judgment on the verdict. The court found that the parties did not dispute "that the Vandenbergs did form the intent to accept this $25 million offer sometime around or shortly immediately after 3:40 p.m. Certainly neither side disputes the fact that they formed this intent to accept it prior to the 3:50 p.m. note perhaps, but certainly prior to the 3:52 phone call between Ms. Agee and Mr. McNabola, but the Court has to fashion a remedy in the extremity, if you will, of these facts and circumstances." Although it found that plaintiffs had "clean hands" in the case, the court entered judgment in favor of Brunswick and against plaintiffs due to McNabola's conduct.

¶ 23    On June 24, 2016, plaintiffs, through current counsel, filed a motion to have Judge Lynch recuse himself in the matter or to have him disqualified. The motion cited Judge Lynch's alleged bias against plaintiffs due to the conduct of their former counsel, McNabola, and the court's failure to ensure they received adequate representation. Plaintiffs also alleged that using Webb as a court conduit to refer the matter of McNabola's conduct to the State's Attorney's office reflected improper bias and prejudice. Judge Lynch held a hearing on

September 23, 2016, to recount the events of the January 19 meeting about the State's Attorney's office matter. After the hearing, Judge Lynch recused himself from further proceedings, and the case was reassigned to Judge James O'Hara.

¶ 24                        III. Plaintiffs' Motion to Vacate Judgment
                          and Reinstatement of the Settlement Agreement

¶ 25    On October 25, 2016, plaintiffs filed a motion to vacate the court's January 19, 2016, and May 26, 2016, orders, and enforce the settlement. After briefing and oral argument, the court found that "the settlement was entered into the record between 4:50 and 4:51 p.m." and immediately thereafter the court "entered an order dismissing the case pursuant to said settlement." Prior to the settlement being entered, at 4:40 p.m., the court found that "all parties were made aware of the content of the jury's question and the time it was published. All parties had the opportunity to participate in a discussion as to how to respond to the note." Therefore, "[t]he parties freely settled this case after full disclosure of all material information concerning the content and time of publishing the jury note. At no point did [Brunswick], through counsels, object to or question the validity of the settlement after learning of the content of the jury question contained in the note or the time it had come out prior to the settlement's entry into the record. Through this conduct, [Brunswick] manifested a consistent intention and willingness to agree and enter into the settlement and to its entry into the record and to the dismissal of the case pursuant to settlement." The court vacated the judgment entered in favor of Brunswick and all orders entered after June 9, 2015, inconsistent with its order and reinstated the settlement agreement.

¶ 26    Brunswick filed a motion to vacate the order or, in the alternative, for clarification. The court denied the motion and entered final judgment on February 15, 2017. This appeal followed.

¶ 27                                    ANALYSIS

¶ 28    First we address our standard of review. Brunswick argues that a *de novo* standard applies where this court is reviewing the trial court's decision to grant or deny enforcement of a settlement agreement and the court did not hold an evidentiary hearing. See *City of Chicago v. Ramirez*, 366 Ill. App. 3d 935, 946 (2006). However, in *K4 Enterprises, Inc. v. Grater, Inc.*, 394 Ill. App. 3d 307, 312 (2009), this court stated that "[w]hen presented with a challenge to a trial court's determination that parties reached an oral settlement agreement, a reviewing court will not overturn that finding unless it is against the manifest weight of the evidence," although no evidentiary hearing had been held. Although we acknowledge the split in authority within this district, we need not decide which standard is correct since our determination here is the same under either standard.

¶ 29    The parties agreed to the $25 million settlement and, with counsel for all parties present, the trial court entered the settlement into the record between 4:50 and 4:51 p.m. on June 9, 2015. Generally, a settlement agreement is not subject to appellate review because it is a recordation of an agreement between the parties rather than a judicial determination of their rights. *In re Marriage of Bielawski*, 328 Ill. App. 3d 243, 251 (2002). Illinois public policy generally favors the peaceful and voluntary resolution of disputes, and a settlement is presumed valid and is conclusive as to all parties and matters included therein. *Cameron v. Bogusz*, 305 Ill. App. 3d 267, 272 (1999). A party can overcome this presumption of validity if

- 6 -

it shows, by clear and convincing evidence, that there was fraud in the inducement, fraud in the execution, mutual mistake, or mental incompetency. *Smith v. Texaco, Inc.*, 232 Ill. App. 3d 463, 468 (1992).

¶ 30　The trial court determined that Brunswick agreed to have the settlement entered into the record after its counsel and representatives discovered the contents of the jury note and the time the court received the note. Therefore, it found "[Brunswick] manifested a consistent intention and willingness to agree and enter into the settlement and to its entry into the record and to the dismissal of the case pursuant to settlement." Brunswick argues, however, that McNabola knew of the jury note and contents almost 30 minutes before Brunswick, but fraudulently concealed this information. Brunswick did not discover this fact until June 15, 2015, six days after the settlement was entered into the record, when Judge Budzinski filed her memorandum of the court. It alleges that, had it possessed this information, it would not have agreed to the settlement. Therefore, Brunswick argues, McNabola fraudulently concealed his knowledge of the note, and the trial court below erred in reinstating the settlement in light of that fraud.

¶ 31　The elements needed to prove fraudulent concealment are (1) concealment of a material fact, (2) intent to induce a false belief where there exists a duty to speak, (3) that the other party could not have discovered the truth through reasonable inquiry and relied upon the silence as an indication that the concealed fact did not exist, (4) that the other party would have acted differently had it known of the concealed information, and (5) that its reliance resulted in its injury. *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 706-07 (2002). In order to prevail on its claim of fraudulent concealment, Brunswick must establish the existence of a special or fiduciary relationship giving rise to McNabola's duty to speak. *Hassan v. Yusuf*, 408 Ill. App. 3d 327, 345 (2011).

¶ 32　Brunswick, however, does not allege that McNabola had a fiduciary duty to inform Patton or Brunswick of the note. Nor does Brunswick allege a special or confidential relationship between the parties giving rise to McNabola's duty to speak. See *Kurti v. Fox Valley Radiologists, Ltd.*, 124 Ill. App. 3d 933, 938 (1984) (finding a confidential relationship "where trust and confidence, by reason of friendship, agency and experience, are reposed by one person in another so the latter gains influence and superiority over the former"). Rather, Brunswick adopts Judge Lynch's determination that McNabola had a duty to disclose his knowledge of the note and its contents to Brunswick under court rules and rules of professional conduct.

¶ 33　Our supreme court has the exclusive authority to prescribe rules governing attorney conduct and to discipline attorneys who violate these rules. *People ex rel. Brazen v. Finley*, 119 Ill. 2d 485, 494 (1988). Consistent with this authority, the court has adopted a Code of Professional Responsibility, appointed an Attorney Registration and Disciplinary Commission (ARDC), and "created a procedural scheme to enhance the ARDC in performing its duties." *Id.* "[T]hrough the use of its exclusive judicial power to prescribe rules governing attorney conduct, and to discipline attorneys for violating those rules, [our supreme court] has created a comprehensive program to regulate attorneys and punish their misconduct." *Id.* Our supreme court has emphasized that the rules of professional conduct are mandatory and "[a]ttorneys who fail to understand them or follow them do so at their peril." *In re Demuth*, 126 Ill. 2d 1, 13 (1988).

¶ 34    However, although these rules are "a safe guide for professional conduct" and attorneys may be disciplined for failing to observe them (*In re Himmel*, 125 Ill. 2d 531, 538 (1988)), "[v]iolation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. *** The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability." Ill. R. Prof'l Conduct (2010) pmbl. (eff. Jan. 1, 2010). Thus, while violation of these rules may be relevant to the standard of care in a legal malpractice claim, the rules themselves do not establish a separate duty or cause of action. *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 353 (2000); *Nagy v. Beckley*, 218 Ill. App. 3d 875, 881 (1991). As such, the rules of professional conduct cannot give rise to McNabola's duty to speak, the violation of which served as the basis of Brunswick's fraudulent concealment claim. Without establishing that duty, Brunswick cannot prove fraudulent concealment as a means to vacate the parties' settlement agreement.

¶ 35    We are also not persuaded by the other arguments Brunswick raises on appeal. First, Brunswick argues that it "did not know all of the material facts regarding the jury note until after the settlement" and this court should rescind the settlement based on mistake. Brunswick contends that McNabola's "superior knowledge" regarding the jury note when the settlement was entered into the record was "material information" it did not have at the time.

¶ 36    However, any mistake made would have been a unilateral one since Judge Lynch found that plaintiffs' attorney McNabola was aware he had prior knowledge of the jury note. "A unilateral mistake is insufficient to invalidate an agreement compromising and settling a disputed claim." *Cole Taylor Bank v. Cole Taylor Bank*, 224 Ill. App. 3d 696, 708 (1992). A court of equity, however, may rescind an agreement at the request of one party, based on a material mistake of fact, if it can be done "without doing injustice to the other party." *McCracken Contracting Co. v. R.L. DePrizio & Associates, Inc.*, 122 Ill. App. 3d 680, 686 (1984). "Recission of a contract refers to cancellation of that contract, so as to restore the parties to the status quo *ante*, the status before they entered into the contract. [Citation.]" *Hassan*, 408 Ill. App. 3d at 353. To rescind a contract based on mistake, a party must show (1) the mistake is material to the transaction, (2) it did not result from lack of diligence, (3) it is of such grave consequence that enforcement would be unconscionable, and (4) the other party can "be placed *in statu quo*" or its precontract position. *McCracken Contracting Co.*, 122 Ill. App. 3d at 686. Where the parties cannot be placed in the status quo *ante*, a claim for rescission based upon mistake is properly dismissed. *Wilkonson v. Yovetich*, 249 Ill. App. 3d 439, 446 (1993).

¶ 37    Brunswick contends that if this court rescinds the settlement, a judgment on the verdict is the status quo *ante* because "[a]bsent Agee's, McNabola's and Degnan's misconduct in hiding material information from Brunswick, no settlement would have occurred and the jury would have announced its unanimous verdict in favor of Brunswick on June 9." We disagree. Returning plaintiffs to the status quo *ante* means placing plaintiffs in their position "existing at the time the contract was made." *U.S. Minerals & Mining, Inc. v. Licensed Processors, Ltd.*, 194 Ill. App. 3d 428, 433 (1990). No jury verdict existed when McNabola informed Patitucci that plaintiffs accepted Brunswick's $25 million offer, nor when the parties entered their settlement in the court record. At that time, the parties had presented closing arguments where McNabola requested $103 million in damages for plaintiffs, Patitucci had offered plaintiffs

$25 million to settle amid the uncertainty of the jury verdict, and the jury was in deliberations. Plaintiffs cannot be placed in this presettlement position because the jury was allowed to deliberate to verdict after the parties settled. Both parties now have knowledge that the jury had reached a verdict in favor of Brunswick based on the evidence presented at trial, information that did not exist presettlement.

¶ 38    Furthermore, we find that rescission of the settlement would do an injustice to plaintiffs, whom Judge Lynch found had "clean hands" in the jury note matter and formed their intent to accept the settlement offer prior to Agee's 3:52 p.m. call to McNabola. In fact, had McNabola relayed the acceptance of Brunswick's offer immediately after plaintiffs informed him of it at 3:40 p.m., the parties would have entered into a valid settlement prior to the court receiving the jury note at approximately 3:50 p.m., with no mistake as grounds for rescission. For these reasons, we decline to apply this equitable remedy here.

¶ 39    Brunswick also argues that Judge Budzinski's clerk, Agee, "an extension of the judge herself," showed a bias in favor of plaintiffs and deprived Brunswick of its due process right to a fair trial before an impartial tribunal. Brunswick contends this due process violation also deprived them of property in the form of its "$25 million dollar property interest in the settlement funds." However, at the hearing before Judge O'Hara, Brunswick argued that "[w]e have always contended that Mr. McNabola and Ms. Agee conspired together, there's conspiracy to deny due process rights." This is not the same issue Brunswick argues on appeal. Also, the record does not show that Brunswick raised the property interest issue before the trial court. Issues not raised in the trial court are deemed forfeited and may not be raised for the first time on appeal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996).

¶ 40    In summary, we find that under the facts of this case McNabola did not have a duty to inform Brunswick about the jury note. Therefore, the settlement which the trial court entered into the record was enforceable, and Judge O'Hara properly vacated Judge Lynch's prior order as well as all orders inconsistent with enforcement of the settlement. We emphasize that our determination does not mean we in any way condone inappropriate conduct by lawyers or court clerks, as avenues do exist to address violations. We determine only that the recourse Brunswick seeks in this appeal is not supported by the law.

¶ 41    Due to our disposition of this appeal, we need not consider Brunswick's argument that plaintiffs cannot benefit from a settlement fraudulently procured by their attorney or Brunswick's contention that it is entitled to entry of judgment on the jury's verdict or, alternatively, a new trial.

¶ 42    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 43    Affirmed.

¶ 44    JUSTICE MIKVA, specially concurring:

¶ 45    I agree with the result reached by the majority in this case but would affirm on the basis relied upon by Judge O'Hara and argued by the parties on appeal: that there could be no fraudulent inducement or other basis for vacating the parties' settlement because all *material* information was disclosed prior to Brunswick moving to have the settlement placed on the record. As Judge Lynch noted following the evidentiary hearing in this matter, the parties do not dispute that plaintiffs decided to accept the $25 million offer prior to plaintiffs' counsel

learning of the jury's note. And, with full knowledge of the content of that note and the time that it had been sent, counsel for Brunswick was present when the parties jointly moved to have the settlement entered in the record. I would not reach the issue of whether a claim for fraudulent inducement may ever be maintained based on a lawyer's duty, under the applicable rules of court and professional conduct, to disclose to opposing counsel that he or she has engaged in *ex parte* conversation with the court or a member of the trial judge's staff.